PRIMITIVO CONCEPCIÓN, por sí y a nombre de su hijo, el infante XAVIER CONCEPCIÓN, peticionarios y apelantes, *v.* ALBA CONCEPCIÓN, MARÍA OCASIO COLÓN y FLOR MARÍA CASANOVA DE OCASIO, demandados y apelados.

*Número:* O-76-366     *Resuelto:* 27 de abril de 1977

930

*Santos P. Amadeo* y *José Enrique Amadeo,* abogados de los peticionarios y apelantes; no compareció el abogado de los demandados y apelados.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

En niño Xavier Concepción nació el 25 de agosto de 1971, hijo de Primitivo Concepción y su esposa Alba. En pleito sobre custodia ante la Corte Suprema de New York, Sec. V,

el 18 de junio de 1973 estos padres sometieron una estipulación acordando que el padre retuviera la del hijo y fijando días y horas de "visita" para relaciones de familia de la madre, pacto que fue aprobado por dicho tribunal. Dos meses después, el 18 de agosto de 1973 la madre se trajo su hijo para el hogar de sus padres en Bayamón, Puerto Rico, donde permanece hasta ahora.

En febrero de 1974 el padre del niño instó un recurso de hábeas corpus en Bayamón solicitando la custodia de Xavier, fundado estrictamente en la resolución de New York aprobando la estipulación, y al presentar la madre demanda de divorcio fundada en separación que no fue contendida, el juez superior consolidó ambos expedientes y dictó sentencia el 18 de junio de 1976 decretando el divorcio y concediendo a la madre la patria potestad y custodia sobre el niño. El marido apela únicamente la decisión en hábeas corpus y alega como errores de instancia (1) que le privó de vista en la que pudiera producir en evidencia la estipulación aprobada por la Corte de New York; (2) no haber dado crédito al informe de New York sobre aptitud del recurrente para tener su hijo y (3) violación del Art. IV, Sec. 1 de la Constitución de los Estados Unidos por no haber el tribunal de Puerto Rico extendido entera fe y crédito a los procedimientos habidos en New York.

No se cometieron los errores señalados. (1) Hemos examinado toda la documentación que refleja los procedimientos habidos ante el Tribunal Supremo en New York que se reducen a una estipulación entre el padre y la madre del menor concernido. No hay indicio alguno de que dicha corte recibiera evidencia relativa al bienestar del menor. Su decisión se limitó estrictamente a la aprobación de un acuerdo entre padre y madre, sin que tuviere dicha córte la mínima oportunidad de evaluar la conveniencia e interés del menor afectado por dicha resolución.

(2) Fue correcta la decisión del tribunal de instancia al descartar el informe de New York frente al concienzudo informe de la Oficina de Relaciones de Familia de Bayamón. Contra la realidad vital de que este niño vive ajustado física y emocionalmente al hogar de su señora madre y abuelos maternos, el recurrente ofrece una alternativa de colocar a su hijo en un centro de cuidado diurno en la ciudad de New York, de donde él lo tomaría, concluida su labor de conserje, al apartamento que comparte con una querida. La proposición del recurrente choca contra todo sentido de estabilidad, firmeza y seguridad respecto a la custodia de este niño que hace cuatro años reside con su familia materna en Bayamón. El informe de la trabajadora social puntualiza la superior conveniencia para el menor de su permanencia junto a su señora madre al resumir: "No se considera justo al menor que se prive del cariño y cuidado de su madre que tan significativo es para su edad, para llevarlo a vivir con el padre donde se visualiza que será prácticamente privado de ambos padres, ya que la relación que mantendrá con el padre será mínima y con la madre no tendrá ninguna, con quien está apegado emocionalmente. Se considera que otro cambio de ambiente unido a la privación de la figura materna podría afectar negativamente al menor. En el hogar donde está el niño es querido y aceptado y está disfrutando de una vida en familia llena de calor humano. Las condiciones en que se encuentra el menor al presente propician el mejor bienestar de éste."

(3) Al adjudicar el caso en sus méritos el Tribunal Superior no violó la disposición constitucional sobre entera fe y crédito. Dicha cláusula no coarta ni restringe la obligación básica del foro de ejercer su facultad de *parens patria* en el mejor interés del menor. "Sin importar el efecto que la cláusula sobre entera fe y crédito pueda tener respecto a decretos de custodia, resulta claro . . . que el Estado del foro tiene al menos tanta libertad para desechar la sentencia, condicionarla o abandonarla, como la tiene el Estado donde fue dic-

tada." *Kovacs* v. *Brewer*, 356 U.S. 604, 607 (1958). El propio estado de New York donde se originan los procedimientos de custodia en este caso tiene resuelto que "[l]a responsabilidad por el bienestar de menores confiere al tribunal poder para decidir sobre custodia irrespectivamente de la residencia y domicilio de los padres y de anteriores órdenes de custodia dictadas en otra jurisdicción. El respeto que le debe el tribunal de un Estado a las leyes y decisiones de otro Estado es regla de política pública que debe ceder al entrar en conflicto con el superior deber de los tribunales de velar por el bienestar de aquéllos bajo su tutela. El derecho de un menor a reclamar la protección del Estado en que reside no puede ser ignorado." *Bachman* v. *Mejías*, 1 N.Y.2d 575 (1956), 136 N.E.2d 866; y con certera aplicación a la estipulación que el recurrente invoca como título irrevocable de custodia, se dice en *Bachman:* "Un niño no es un bien mueble que pueda servir de causa en un acuerdo o compromiso. Los derechos del niño están por encima de los derechos de las partes en una estipulación y de la orden aprobando la misma." *Ibid.* pág. 869; *Marrero Reyes* v. *García Ramírez*, 105 D.P.R. 90 (1976).

Con estos antecedentes y fundamentos *la sentencia dictada el 18 de junio de 1976 por la Sala de Bayamón del Tribunal Superior, es por la presente, confirmada.*