EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Emilio Pena Fonseca y Elizabeth Rodríguez Rivera<br>      Demandantes-Peticionarios<br><br>      v.<br><br>Emibel Pena Rodríguez y Samuel Capó Gómez<br>      Demandados-Recurridos<br>_____<br>Emilio Pena Fonseca y Elizabeth Rodríguez Rivera<br>      Demandantes-Recuridos<br><br>      v.<br><br>Emibel Pena Rodríguez y Samuel Capó Gómez<br>      Recurridos<br><br>      v.<br><br>Procuradora Especial de Relaciones de Familia<br>      Peticionaria | Certiorari<br><br><br>2000 TSPR 186 |

Número del Caso: CC-97-731
                 CC-97-734

Fecha: 15/diciembre/2000

Tribunal de Circuito de Apelaciones: Circuito Regional II

Juez Ponente: Hon. José E. Broco Oliveras

Abogado de la Parte Demandantes-Peticionarios: Por Derecho Propio

Abogado de la Parte Demandados-Recurridos: Lcdo. Fidel E. Vélez Arcelay

Oficina del Procurador General:
                          Lcda. Edda Serrano Blasini

Abogado del Departamento de la Familia: Lcdo. Carlos Pérez Rodríguez

Materia: Custodia y Privación de Patria Potestad

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Emilio Pena Fonseca y Elizabeth Rodríguez Rivera | * |
| | * |
| Demandantes-Peticionarios | * |
| | * |
| v. | * |
| | * |
| Emibel Pena Rodríguez y Samuel Capó Gómez | * |
| | * |
| Demandados-Recurridos | * |
| ********************************* | CC-97-731 |
| | * CC-97-734 |
| Emilio Pena Fonseca y Elizabeth Rodríguez Rivera | * |
| | * |
| Demandantes-Recurridos | * |
| | * |
| v. | * |
| | * |
| Emibel Pena Rodríguez y Samuel Capó Gómez | * |
| | * |
| Recurridos | * |
| | * |
| Procuradora Especial de Relaciones de Familia | * |
| | * |
| Peticionaria | * |
| ********************************* | |

SENTENCIA
San Juan, Puerto Rico, a 15 de diciembre de 2000.

El 23 de febrero de 1996, los esposos Emilio Pena Fonseca y Elizabeth Rodríguez Rivera (en lo sucesivo los demandantes) presentaron demanda contra los esposos Samuel Capó Gómez y Emibel Pena Rodríguez (en lo sucesivo los demandados).[1] El eje de la controversia lo constituyen los tres (3) hijos de los últimos y, a su vez, nietos de los primeros. Los demandantes alegaron que Capó Gómez, además de representar un mal ejemplo para los menores, los maltrataba. Así también, le imputaron negligencia a su hija Emibel por no hacer gestión alguna para mejorar la situación. En vista de lo cual, los demandantes solicitaron la custodia permanente y tutela de los tres niños, así como la privación de la patria potestad de los demandados sobre los menores.

Por otra parte, el 8 de abril de 1996, los demandados, en su contestación, negaron los hechos alegados y, a su vez, presentaron una reconvención. En esta última, adujeron, en síntesis, que el pleito incoado era otro intento de los demandantes, con el propósito de acosarlos, coaccionarlos y acusarlos falsamente.

Luego de varios señalamientos e incidentes procesales, la controversia quedó trabada cuando los demandantes, como parte del descubrimiento de prueba, solicitaron la evaluación psicológica de los menores por un perito privado, así como la toma de deposiciones a los funcionarios del Departamento de la Familia a cargo de la investigación del caso. El Tribunal de Primera Instancia denegó tales peticiones.

Inconformes, los demandantes acudieron, mediante recurso de *certiorari*, ante el Tribunal de Circuito de Apelaciones. El 29 de agosto de 1997 dicho foro denegó la toma de deposiciones de los funcionarios del Departamento de la Familia pero autorizó las evaluaciones psicológicas a los menores por peritos privados. Oportunamente, tanto los demandantes como la Procuradora

---

[1] La Sra. Emibel Pena Rodríguez es hija de los demandantes.

Especial de Relaciones de Familia, presentaron mociones de reconsideración, las cuales fueron rechazadas por el foro apelativo intermedio.

En vista de ello, los demandantes y la Procuradora Especial de Relaciones de Familia acudieron ante nos, vía *certiorari*, impugnando la sentencia del Tribunal de Circuito de Apelaciones. Los primeros solicitaron revisión de la denegatoria de la toma de deposiciones; mientras que, la Procuradora de Especial de Relaciones de Familia solicitó la revocación de la autorización de las pruebas psicológicas a los menores.

Tras consolidar los recursos y evaluar los planteamientos esgrimidos por las partes, **revocamos la sentencia del Tribunal de Circuito de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para los procedimientos correspondientes. En primer lugar, el Tribunal de Primera Instancia determinará si la información a ser obtenida mediante la toma de deposiciones es necesaria para la resolución de la controversia y si la divulgación de dicha información no milita contra los mejores intereses de los menores. De concluir que la información es necesaria y que su divulgación no atenta contra los mejores intereses de los menores, el tribunal determinará la información sobre la cual los funcionarios pueden ser depuestos. De lo contrario, el tribunal denegará la toma de las deposiciones. En segundo lugar, previa evaluación psicológica de los menores por un perito del Tribunal, el Tribunal de Primera Instancia permitirá, a su discreción, evaluaciones psicológicas adicionales realizadas por peritos privados, de así solicitárselo la parte interesada y demostrar la necesidad de las mismas.**

Lo pronuncia, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Corrada del Río emite Opinión de Conformidad a la cual se une el Juez Asociado señor Rivera Pérez; el Juez Asociado señor Fuster Berlingeri está conforme con la parte de la sentencia relacionada con las pruebas psicológicas a los menores, pero disiente en lo relativo a las deposiciones, por cuanto ordenaría la toma de las mismas sin trámite ulterior; el Juez Presidente señor Andréu García disiente sin opinión escrita; y el Juez Asociado señor Rebollo López no interviene.


                         Isabel Llompart Zeno
                         Secretaria del Tribunal Supremo

Emilio Pena Fonseca y                    *
Elizabeth Rodríguez Rivera               *
                                                    *
Demandantes-Peticionarios                *
                                         *
        v.                               *
                                                   *
Emibel Pena Rodríguez y                      *
Samuel Capó Gómez                        *
                                                   *
Demandados-Recurridos                    *
*********************************         CC-97-731
                                         *       CC-97-734
Emilio Pena Fonseca y Elizabeth          *
Rodríguez Rivera                         *
                                                   *
Demandantes-Recurridos                   *
                                                   *
                                                   *
            v.                           *
                                                   *
Emibel Pena Rodríguez y                      *
Samuel Capó Gómez                        *
                                                   *
        Recurridos                       *
                                                   *
Procuradora Especial de                      *
Relaciones de Familia                    *
                                                   *
        Peticionaria                     *
***********************************

Opinión de Conformidad emitida por el Juez Asociado señor Corrada del Río a la cual se une el Juez Asociado señor Rivera Pérez

San Juan, Puerto Rico, a 15 de diciembre de 2000.

El caso de autos trata sobre un triste drama que data desde el año 1996, en el que los padres y los abuelos maternos están enfrascados en una lucha interminable por la custodia de tres menores de edad, quienes son las víctimas en esta lamentable situación. Este caso presenta dos controversias, a saber: primera, si los abuelos tienen derecho a deponer a los funcionarios del Departamento de la Familia (en adelante Departamento) encargados de la investigación sobre una alegación de los abuelos de maltrato contra los padres de los menores, a pesar del privilegio consejero-víctima de delito; y, segunda, si los menores deben ser evaluados por un perito privado, a pesar de que hay un perito designado por el tribunal.

I

El señor Emilio Pena Fonseca y la señora Elizabeth Rodríguez Rivera (en adelante los demandantes), abuelos maternos de los menores, incoaron el 23 de febrero de 1996 una demanda contra su hija, Emibel Pena Rodríguez, y su yerno, Samuel Capó Gómez (en adelante los demandados).[2] Los demandantes adujeron que tenían la custodia física de los menores C.A.C.P. y S.E.C.P.[3] por orden de la Hon. Juez María J. Busó Aboy, quien determinó causa probable contra

---

[2] El 8 de abril de 1996 los demandados presentaron su contestación a la demanda, así como una reconvención.

[3] Los demandados, que están casados entre sí, procrearon a C.A.C.P., nacido el 11 de agosto de 1992; a S.E.C.P., nacido el 5 de junio de 1993; y a M.A.C.P., nacido el 11 de marzo de 1995.

el demandado Samuel Capó por el cargo de agresión agravada contra su hijo C.A.C.P.,[4] en contravención al Art. 95 del Código Penal de Puerto Rico, 32 L.P.R.A. sec. 4032. La orden sobre custodia provisional no se hizo constar por escrito. Los demandantes no sólo alegaron que el demandado Samuel Capó Gómez maltrataba y le daba mal ejemplo a sus hijos sino también que su hija, la demandada Emibel Pena Rodríguez, había sido negligente al no realizar gestión alguna para aliviar dicha situación. Por último, solicitaron que se les concediera la custodia permanente de los niños, que se les designara tutores y que se privara a los demandados de la patria potestad sobre los menores.[5]

Debido a lo apremiante de la situación, la Hon. Ileana Bonet Fernández, Juez, señaló vista urgente para el 26 de febrero de 1996. El tribunal designó a la Lcda. Sandra Valentín y a la Lcda. Edda Serrano Blasini, Procuradoras de Relaciones de Familia, como Defensoras Judiciales de los menores.[6] En la vista, testificó la trabajadora social María del Pilar Vélez, del Programa Abrigo, como perito técnico social.[7] Luego de desfilar la prueba, el tribunal determinó que no tenía constancia de cuáles fueron los elementos que tomó en consideración la Hon. Juez Busó Aboy para otorgar la custodia provisional de los dos hijos menores de más edad a los abuelos maternos. Tomando esto en consideración, así como la prueba desfilada, el tribunal entendió que no se probó indicio alguno de maltrato. Por tal razón, bajo el poder de *parens patriae* del Estado y en el mejor interés de los menores, el tribunal concedió la custodia provisional a los padres biológicos.[8] Por último, señaló una vista de seguimiento para el 7 de marzo de 1996.

---

[4] El demandado Capó Gómez fue encontrado no culpable por duda razonable.

[5] En conjunto con la demanda, los demandantes presentaron un escrito titulado *Moción de Remedio Urgente* solicitando que se les concediera la custodia provisional, y luego permanente de sus tres nietos, que se ordenara al Programa de Relaciones de Familia a realizar las evaluaciones sociales, psicológicas, psiquiátricas y físicas necesarias, que rindieran los informes correspondientes, y que se prohibieran las relaciones filiales para beneficio de los menores.

[6] La Procuradora Sandra Valentín hizo la mayoría de los planteamientos. De modo, que cuando nos referimos a la Procuradora, se trata de la Lcda. Valentín.

[7] El Programa Abrigo está adscrito al Departamento y se dedica a la protección de menores.

[8] Los menores estarían bajo la custodia de los padres biológicos pero bajo la supervisión del Departamento. No se permitirían las visitas de los abuelos hasta que el tribunal así lo dispusiera. El Departamento debía monitorear y supervisar la custodia de los menores en el hogar y preparar un informe y una evaluación completa del caso para tener todos los elementos de juicio necesarios para tomar una determinación final. También el Departamento debía

En la vista de seguimiento, el tribunal dispuso que las medidas provisionales tomadas continuaran con entera fuerza y vigor. Mantuvo la orden de que los menores permanecieran con sus padres biológicos. Además, entendió que no era procedente el que se sometiera a las partes y a los menores a unas evaluaciones por peritos privados, pero que esto no significaba que las partes no tuvieran este derecho de así solicitarlo en su día.

Tras varios señalamientos, se celebró una vista sobre el estado de los procedimientos el 30 de mayo de 1996. En ésta, la representación legal del Departamento le entregó al tribunal un informe social y las evaluaciones psiquiátricas de los padres demandados. Los demandantes solicitaron que se realizara, por peritos de conducta, una evaluación a los demandados. La Procuradora de Relaciones de Familia (en adelante la Procuradora) mencionó la posibilidad de que el psicólogo fuera del tribunal, se opuso a que se hicieran las pruebas privadas por entenderlas prematuras y objetó que los menores continuaran sometiéndose a pruebas de peritos. El tribunal indicó que no deseaba que el pleito se convirtiera en una batalla de peritos y determinó que los menores serían evaluados por un perito psicólogo del Tribunal. Además, señaló que las partes se someterían a pruebas psiquiátricas y que éstas serían realizadas por la psiquiatra Elba Vargas del Departamento.

Luego de varios trámites procesales, el 7 de octubre de 1996, los demandantes presentaron *Moción Solicitando Orden para que se Ordene a los Demandados a Someterse a Evaluación por Perito de los Demandantes*.[9] El 4 de noviembre de 1996 los demandados, mediante moción, en esencia, se opusieron a lo solicitado ya que habían cumplido o estaban en proceso de cumplir con casi todo lo que se les había requerido. También adujeron que la *resolución* del 26 de febrero de 1996 había resuelto ese asunto y que dicha *resolución* no había sido apelada.

El 6 de noviembre de 1996 la Procuradora compareció indicando que en varias ocasiones el tribunal había denegado la solicitud de evaluaciones psicológicas a los menores.[10] Por lo cual, la Procuradora solicitó que se declarara no ha lugar todo lo requerido por los demandantes y que se señalara una vista evidenciaria en sus méritos.

---

realizar evaluaciones psiquiátricas, psicológicas y sociales tanto del hogar de los padres biológicos como del hogar de los abuelos maternos.

Además, se le ordenó a la Srta. Aixa Monclova –Supervisora del Programa de Relaciones de Familia del Tribunal– que analizara todas las evaluaciones que presentara el Departamento. De estimar que eran necesarias evaluaciones adicionales se lo tendría que comunicar al tribunal.

[9] En dicho escrito, los demandantes expresaron que habían contratado los servicios profesionales del Dr. Agustín García, y que éste les manifestó la necesidad de evaluar de inmediato a los tres menores y a los padres biológicos. Además, indicaron que las evaluaciones se conducirían en unas fechas específicas, ya escogidas por ellos.

[10] También señaló que el Departamento continuaba supervisando semanalmente el hogar paterno.

El 20 de noviembre de 1996 los demandantes presentaron *Moción para Informar Aviso de Toma de Deposición a la Parte Demandada y a Testigos*.[11] El tribunal concedió diez (10) días a los demandados y al Departamento para que replicaran. Sin embargo, la orden fue notificada el 19 de diciembre de 1996, tornando académica la fecha de la toma de deposiciones. A pesar de esto, el 2 de diciembre, el Departamento se opuso a la toma de deposiciones ya que había transcurrido el término de la Regla 23.4 de Procedimiento Civil.[12] Los demandados, a su vez, se opusieron por estar pendiente el asunto sobre el incumplimiento de los demandantes, al no haberse sometido a las evaluaciones ordenadas, y por lo dispuesto en la Regla 23.4, *supra*.

El 31 de diciembre de 1996 los demandantes presentaron escrito solicitando urgentemente una conferencia en corte abierta para discutir el estado del caso y los asuntos pendientes. Los demandantes expresaron que todavía estaba pendiente la solicitud de examen psicológico a los demandados y a los menores.

Nuevamente, los demandantes presentaron una moción informativa sobre toma de deposiciones.[13] La Procuradora se opuso, alegando que la misma era tardía y que permitir la toma de deposiciones sería contrario a la orden del tribunal de 26 de febrero de 1996 en la cual se requería mantener bajo el derecho de confidencialidad de los menores todo el contenido del expediente de dos (2) años de trabajo social. Mediante orden del 10 de enero de 1997, notificada el 27 de enero 1997, el tribunal declaró no ha lugar la solicitud de toma de deposiciones y señaló vista en su fondo para el 1 de abril de 1997.

Así las cosas, mediante *Moción en Réplica y para Solicitar Orden Protectora* de 17 de enero de 1996, los demandantes indicaron que procedía en derecho la toma de deposiciones ya que ello era una secuela legítima del descubrimiento de prueba iniciado. El 21 de enero de 1996 los demandantes presentaron *Segunda Moción Urgente para Volver a Solicitar del Honorable Tribunal una Conferencia en Corte Abierta sobre el Estado del Caso y los Asuntos Pendientes de Ser Resueltos* aduciendo que la no resolución de los asuntos pendientes les había privado de seguir normalmente su caso y de prepararse adecuadamente para la vista en los méritos. En relación con esta moción, el 10 de febrero de 1997 el tribunal dictó orden a los demandantes

---

[11] En la moción se indicó que se le tomaría deposición a las siguientes personas, a saber: Emibel Pena Rodríguez, Samuel Capó Gómez, Lcdo. Erick Kolthoff, Adleen Cotto, José Crespo, Irma Melecio, Adamaris Gutiérrez y a María del Pilar Vélez. Los últimos cinco (5) son funcionarios del Departamento que han participado en la investigación sobre los alegados maltratos. Las deposiciones se llevarían a cabo los días 3 y 4 de diciembre de 1996.

[12] Regla 23.4. Término para utilizar los mecanismos.

Las partes concluirán las gestiones relacionadas con el descubrimiento de prueba dentro del término de sesenta (60) días siguientes a la notificación de la contestación a la demanda, reconvención, demanda contra tercero y demanda contra coparte. El tribunal tendrá facultad para prorrogar o acortar dicho término según las circunstancias del caso lo ameriten y garanticen una pronta solución de la controversia. 32 L.P.R.A. Ap. III.

para que se refirieran a las órdenes notificadas el 27 de enero de 1997 y el 18 de febrero de 1997. Dispuso, además, que la moción urgente era académica.

Inconformes con la orden del tribunal de 10 de enero de 1997, notificada el 27 de enero, los demandantes presentaron, el 25 de febrero de 1997, recurso de *certiorari* ante el Tribunal de Circuito de Apelaciones (en adelante el TCA).[14] El 13 de marzo de 1997 los demandantes solicitaron del TCA la paralización de la vista en su fondo señalada para el 1 de abril de 1997. Así las cosas, el 14 de marzo de 1997, el TCA emitió resolución concediendo veinte (20) días a los demandados para que mostraran causa por la cual no debía expedir el auto y revocar la resolución recurrida, y paralizó la vista del caso en su fondo ante el tribunal de instancia.

Mediante sentencia de 29 de agosto de 1997, notificada el 10 de septiembre de 1997, el TCA expidió el auto, modificó y revocó en parte la resolución recurrida. Denegó las deposiciones solicitadas en cuanto a los funcionarios del Departamento, a saber: Adamaris Gutiérrez, Adleen Cotto, Irma Melecio, María del Pilar Vélez y José Crespo; y autorizó las evaluaciones psicológicas a los demandados y a los menores por peritos de los demandantes.

El 25 de septiembre de 1997 tanto la Procuradora como los demandantes presentaron sendas mociones de reconsideración.[15] El TCA, mediante resolución de 29 de octubre de 1997, notificada el 7 de noviembre de 1997, las denegó. El 8 de diciembre de 1997 los demandantes recurrieron ante este Tribunal alegando,[16] en síntesis, que el TCA erró al denegar absoluta y totalmente

---

[13] En esta ocasión, las deposiciones se llevarían a cabo el 17 y 18 de enero de 1997.

[14] Los demandantes adujeron que el haber denegado el tribunal de instancia la toma de deposiciones a los funcionarios del Departamento les negó la oportunidad de conocer el testimonio de testigos y de prepararse adecuadamente para el juicio. Además, alegaron que había errado el tribunal de instancia al declarar académicas las solicitudes de conferencia en corte abierta para resolver los asuntos pendientes.

[15] La Procuradora solicitó reconsideración de la parte de la sentencia que permite las evaluaciones psicológicas a los menores; los demandantes pidieron la reconsideración sobre la negativa a la toma de deposiciones de varios testigos.

[16] Recurso Núm. CC-1997-731. Los demandantes señalaron el siguiente error:

> [c]ometió error de Derecho el Honorable Tribunal de Circuito de Apelaciones, al denegar de forma <u>absoluta y totalmente</u> la toma de deposiciones de los funcionarios del Departamento de la Familia y de programas contratados por dicho Departamento, <u>aplicando mecánicamente</u> al presente caso, la norma de Derecho diseñada por este Honorable Tribunal Supremo en el caso <u>Rodríguez del Valle</u> *V.* [sic] <u>Corcelles Ortiz</u>, 94 J.t.S. [sic] 63, sin darle consideración alguna a las diferencias esenciales, de hechos y del Derecho aplicable, que distinguen al caso de autos del caso <u>Rodríguez del Valle</u>, <u>supra</u>, cuya denegatoria absoluta hace surgir en este caso una cuestión constitucional sustancial, bajo el palio de la Constitución Federal y la Constitución del Estado Libre Asociado de Puerto Rico. Dicha denegatoria absoluta, también impide que los peticionarios puedan presentar ante el Honorable Tribunal de Primera Instancia, evidencia

**continúa...**

[15] **...continuación**

la toma de deposiciones y aplicar mecánicamente el caso *Rodríguez del Valle v. Corcelles Ortiz*, 135 D.P.R. 834 (1994). El 9 de diciembre de 1997 la Procuradora presentó ante este Tribunal recurso de *certiorari* solicitando la revisión de otra parte de la sentencia del TCA.[17] Adujo, entre otras cosas, que los menores no eran parte bajo la Regla 32.1 de Procedimiento Civil y la falta de justificación para las pruebas psicológicas solicitadas. El 23 de febrero de 1998 la Procuradora presentó escrito solicitando la consolidación de los pleitos. Mediante resolución del 2 de marzo de 1998, consolidamos ambos recursos.

Contando con las comparecencias de los peticionarios, de la Procuradora y del Departamento, estamos en posición de resolver.[18]

II

En primer lugar, procedemos con la discusión del error señalado por los demandantes-peticionarios. Es principio rector en la esfera civil que el descubrimiento de prueba debe ser amplio y liberal. *Aponte v. Sears Roebuck de P.R., Inc.,* 129 D.P.R. 1042, 1049 (1992); *General Electric v. Concessionaires, Inc.*, 118 D.P.R. 32, 38 (1986); *Rivera Alejandro v. Algarín*, 112 D.P.R. 830, 834 (1982). La Regla 23.1(a) de Procedimiento Civil dispone que "[l]as partes podrán hacer descubrimiento sobre cualquier materia, *no privilegiada*, que sea pertinente al asunto en controversia en el pleito pendiente...." (Bastardillas nuestras.) 32 L.P.R.A. Ap. III. La regla sólo establece dos cortapisas, a saber: primero, que no se trate de materia privilegiada, y segundo, que sea pertinente al asunto en controversia. En referencia al concepto de pertinencia, a los fines del descubrimiento de prueba, hemos señalado que es más amplio que el empleado en el área del derecho probatorio para la admisibilidad de la prueba. *Hon. Charlie Rodríguez, et als.* Ex parte, res. el 30 de junio de 1999, 99 TSPR 104, 148 D.P.R. ___ (1999), 99 JTS 110, pág. 1283; *Medina v. M.S. & D. Química P.R., Inc.,* 135 D.P.R. 716, 731 (1994). Basta con que la materia solicitada tenga "posibilidad razonable de relación con el asunto en controversia". *Íd.*

La materia privilegiada objeto de la limitación de la Regla 23.1 de Procedimiento Civil es aquélla cubierta por los privilegios reconocidos por las Reglas de Evidencia.[19] *Rivera*

---

fehaciente de que la posición asumida por el Departamento de la Familia en este caso, está totalmente permeada y maculada por el gravísimo conflicto de intereses que ha viciado de nulidad las actuaciones de dichos funcionarios y las recomendaciones que han dado al Departamento de la Familia, todo ello contrario a los mejores intereses de los tres menores. (Subrayado en el original.)

[17] Recurso Núm. CC-1997-734. La Procuradora señaló el siguiente error:

[e]rró el Honorable Tribunal de Circuito de Apelaciones al autorizar evaluaciones sicológicas de [los] menores Christopher y Samuel Capó Pena por perito privado contratado por [los] abuelos demandantes.

[18] El caso quedó sometido en los méritos para su adjudicación el 3 de septiembre de 1999, luego de varios trámites procesales.

*Alejandro v. Algarín*, supra, pág. 833. Véase también, *Rodríguez v. Scotiabank de P.R.*, 113 D.P.R. 210 (1982).

En la presente situación la Procuradora adujo que no procede la toma de deposiciones a los funcionarios del Departamento ya que la información obtenida por dichos funcionarios está cobijada bajo la Regla 26-A de Evidencia. Esta regla establece el privilegio consejero-víctima de delito. En síntesis, dicho privilegio cubre la información entre la víctima del delito y su consejero, "cuando tal información se divulga durante el curso del tratamiento que ofrece el consejero para atender una condición emocional o psicológica de la víctima producida por la comisión del delito y que se hace bajo la confianza de que ésta no será divulgada a terceras personas." 32 L.P.R.A. Ap. IV R. 26-A (Supl. 1999). Tanto la víctima como una persona autorizada por la misma, un representante legal o "el consejero a quien se le hizo la comunicación" pueden invocar el privilegio. *Íd.*

En *Rodríguez Del Valle v. Corcelles Ortiz*, supra, tuvimos la oportunidad de interpretar dicho privilegio en conjunto con la *Carta de Derechos de las Víctimas y Testigos de Delito*, Ley Núm. 22 de 22 de abril de 1988, 25 L.P.R.A. sec. 973 *et seq.* (Supl. 1998). En aquella ocasión se trataba de un litigio entre ex-cónyuges referente a **las relaciones paterno filiales** entre una niña y su padre, el cual fue acusado por la madre de abuso sexual contra la menor. Tal alegación culminó con la presentación de cargos criminales contra el padre. Así las cosas, el tribunal de instancia suspendió **las relaciones paterno filiales**; mientras que, también ordenó "al custodio de los récord [sic] del Programa Biosicosocial del Hospital Pediátrico a poner a disposición de Rodríguez Del Valle [el padre], su representación legal y su perito psicólogo *todos* los récord [sic] en su poder relativos a la menor en controversia...."[20] (Bastardillas en el original.) *Íd.*, pág. 838. Mediante la orden, el tribunal de instancia declaró sin lugar *sub silentio* una petición del Departamento de Justicia invocando el privilegio consejero-víctima de delito.

En el citado caso, resolvimos que las comunicaciones entre la niña y los consejeros integraban materia privilegiada bajo el manto de la Regla 26-A de Evidencia. Por lo tanto, éstas no podían ser objeto de descubrimiento.

La Exposición de Motivos de la Ley Núm. 30 de 19 de junio de 1987, que adoptó la Regla 26-A de Evidencia, señala lo siguiente:

> [e]l daño emocional causado a la víctima de delito es generalmente mayor que el daño físico sufrido. Los servicios de consejería son [,] por lo general [,] la forma en que las víctimas y su familia pueden sobrellevar el trauma psicológico que dichas experiencias suelen causar. Durante el proceso de consejería se discuten abiertamente las reacciones y sentimientos de la víctima sobre el crimen cometido contra ésta. Dichas reacciones y sentimientos están muy relacionados con sus historias personales y su perfil psicológico. Por ello, la consejería a las víctimas de

---

[19] Véanse, Reglas de Evidencia de la 23 a la 32. 32 L.P.R.A. Ap. IV R. 23 – R .32.

[20] La madre había acudido al Programa Biosicosocial del Hospital Pediátrico del Recinto de Ciencias Médicas solicitando ayuda, por razón de la alegación de abuso sexual.

delito y [a] sus familias es más exitosa cuando las víctimas están seguras de que sus pensamientos se mantendrán en confidencia y no se divulgarán sin su permiso.

Por lo tanto, **por ser política pública del Estado Libre Asociado** el mantener y fomentar la salud física y mental de la ciudadanía y proveer protección y asistencia a las víctimas y testigos de delito en los procesos judiciales [,] **se establece el privilegio sobre la confidencialidad de la comunicación entre la víctima de delito y su consejero y se declara que la misma es inmune a cualquier descubrimiento de prueba que sea parte de un proceso legal.** (Énfasis nuestro.) Leyes de Puerto Rico de 1987, págs. 107–108.

Es de rigor destacar que, en los casos sobre custodia, los tribunales tienen el poder inherente, en su función de *parens patriae*, de velar por el mejor bienestar de los menores. Véase, *Torres, Ex parte*, 118 D.P.R. 469 (1987); *Colón v. Ramos*, 116 D.P.R. 258 (1985); *Concepción v. Concepción*, 105 D.P.R. 929 (1977); *García Santiago v. Acosta*, 104 D.P.R. 321 (1975). Al determinar la custodia de menores, los tribunales "deben guiarse principalmente por el bienestar y los mejores intereses del menor," ya que éstos constituyen la piedra angular de la política pública. *Marrero Reyes v. García Ramírez*, 105 D.P.R. 90, 104 (1976). Véase también, *Departamento de la Familia v. Soto*, supra. Por lo que, los tribunales, velando por el mejor bienestar de los menores, deben aplicar dichos principios en los casos de privación de patria potestad y/o custodia donde se sospeche de maltrato o negligencia, y el Departamento intervenga activamente en los mismos.

En el caso de autos se plantea la cuestión de si aplica la Ley Núm. 75 de 28 de mayo de 1980, mejor conocida como la Ley de Protección de Menores, 8 L.P.R.A. sec. 401 *et seq.* (en adelante Ley 75), o la Ley Núm. 342 de 16 de diciembre de 1999, conocida por la Ley para el Amparo a Menores en el Siglo XXI (en adelante Ley 342). Este asunto es medular a la controversia ante nos ya que la aplicación de estas leyes excluyen del privilegio consejero-víctima del delito la información que pudiese ser obtenida a través de las deposiciones a los funcionarios del Departamento, según discutimos más adelante.

Al momento de presentarse el pleito que nos ocupa estaba vigente la Ley 75, *supra*. Sin embargo, la Ley Núm. 342, *supra*, mediante su Art. 57, derogó la Ley 75. Tratándose de procedimientos de descubrimiento de prueba, que aún no se han efectuado, de un pleito en proceso, aplica la nueva ley que a estos fines, de todos modos, es sustancialmente similar a la Ley 75, *supra*.[21]

La Ley 342, *supra,* es de aplicación en los casos en que el Departamento solicita **la privación, restricción o suspensión de la patria potestad o custodia** dentro de procedimientos

---

[21] En lo pertinente, el Art. 29 de la Ley 342 es similar al Art. 27 de la Ley 75. Así también, el Art. 31 de la Ley 342 y el Art. 28 de la Ley 75. El Art. 39 de la Ley 342 corresponde sustancialmente al Art. 33 de la Ley 75.

incoados para amparar a un menor víctima de maltrato o negligencia. Art. 45 de la Ley 342, *supra*. La política pública y los principios establecidos en este estatuto son de aplicación a los casos de custodia donde haya sospecha de maltrato o negligencia e intervenga activamente el Departamento.

En la Exposición de Motivos de la Ley 342, *supra*, la Asamblea Legislativa expresó que:

> [n]uestro Gobierno reconoce que el rol de la familia es de suma importancia en nuestra sociedad y que los menores alcanzan su mayor potencial de desarrollo en el núcleo familiar. Sin embargo, cuando el padre y/o la madre no pueden satisfacer las necesidades de estos menores y protegerlos adecuadamente, el Estado tiene la responsabilidad de intervenir para proteger su salud y bienestar.

> **La Ley Núm. 75 de 28 de mayo de 1980, según enmendada, conocida como "Ley de Protección a Menores", se aprobó con la intención de garantizar la protección de los menores que son víctimas o están en riesgo de ser víctimas de maltrato y/o negligencia, evitar que éstos continúen sufriendo daños y proveerles los servicios y la ayuda que sea necesaria. A través de los años, dicha Ley ha sido enmendada para lograr diversos propósitos entre los cuales se destacan los siguientes: establecer parámetros mediante los cuales el Departamento de Servicios Sociales, hoy Departamento de la Familia, pudiese solicitar la restricción, privación o suspensión de la patria potestad de aquellos padres que no estaban capacitados para tener a sus hijos bajo su custodia legal y así garantizar la protección de los mismos; agilizar y unificar procedimientos; requerir diligencias por parte del Estado para preservar la integridad familiar; tipificar los delitos de maltrato y negligencia institucional e imponer penalidades. No obstante, esta Ley requiere ser revisada extensamente para garantizar la seguridad, permanencia y bienestar de los menores.**

> ....

> Nuestra Administración en aras de proteger del maltrato a los menores, de manera que éstos puedan vivir en un ambiente seguro y saludable que promueva su desarrollo social, emocional, intelectual y físico, entiende indispensable la aprobación de esta Ley. La misma es producto de un esfuerzo conjunto...con el propósito de proveer soluciones concretas, reales y sobre todo, expeditas, al maltrato del que son objeto muchos de nuestros niños por parte de sus padres, madres o personas responsables por su bienestar.

> **Mediante esta Ley se reenfoca la política pública del Estado respecto al maltrato a menores, reconociendo como consideración prevaleciente el mejor bienestar del menor y que el derecho a la unidad familiar está limitado por el derecho que tienen éstos a ser protegidos del maltrato y la negligencia.** Asimismo, se disponen criterios claros y precisos para eximir al Estado, en determinadas circunstancias, de ejercer esfuerzos razonables para preservar la integridad familiar. Se incorporan, además, disposiciones para regir y agilizar los procesos administrativos y judiciales. De igual forma se establecen disposiciones para facilitar la coordinación entre las agencias y entidades que ofrecen servicios a niños maltratados. El Departamento de la Familia, como agencia rectora que presta servicios y protección a menores, implantará esta Ley e iniciará procedimientos con el fin de que un tribunal, cuando se observen cualesquiera de las situaciones que dispone esta Ley, decrete la privación de la custodia y/o patria potestad del padre, madre o persona responsable del bienestar de un menor que no pueda garantizar la seguridad y el bienestar de éste....

> En los albores del nuevo milenio, esta Administración reconoce la inviolabilidad de los derechos del ser humano, especialmente la de nuestros niños y manifiesta que la defensa del bienestar general de los mismos es un interés apremiante del Estado. (Énfasis nuestro.)

El Art. 3 de la Ley 342, *supra,* dispone que "la salud y la seguridad de nuestros niños es interés apremiante del Estado...." Por tal razón, la intención del gobierno es "proteger y ayudar a menores maltratados y desatendidos, menores en circunstancias que representen un

riesgo sustancial de sufrir maltrato...." *Íd*. Por último, señala que "[e]sta [l]ey será interpretada de forma que se garantice *el mejor interés del menor*." (Bastardillas nuestras.) *Íd*.

En su Art. 29, la Ley 342, *supra*, dispone que los informes y expedientes relacionados con casos de protección, inclusive los levantados por cualquier agencia –pública o privada– en la ejecución de la misma, son confidenciales, con excepción de las circunstancias autorizadas por la ley. Ley 342, *supra*. Todo esto con el fin de proteger los derechos de los menores, sus padres o custodios. *Íd.*

Mientras que el Art. 31 dispone que "[n]inguna persona, oficial, funcionario, empleado o agencia tendrá acceso a los expedientes a menos que sea para cumplir con los propósitos directamente relacionados con la administración de esta Ley." Ley 342, *supra*. En el mismo artículo aparecen enumeradas las personas o agencias con acceso a los expedientes. Allí se señala que el tribunal tiene acceso a los expedientes si es necesario para resolver la controversia. El acceso está "limitado a la inspección en cámara por el juez, a menos que el tribunal decida que la revelación pública de la información...es necesaria para resolver la controversia que tenga ante sí". *Íd*.

Lo antes expresado hay que interpretarlo en conjunto con lo dispuesto por el Art. 39 de la referida ley. En su cuarto párrafo el Art. 39 dispone que:

> [l]as comunicaciones privilegia-das, según lo dispuesto en las Reglas de Evidencia de Puerto Rico, entre cualquier profesional y su cliente o paciente, excepto entre abogado y cliente, **no aplicarán en aquellas situaciones en donde exista o se sospeche que existe maltrato.... Dicha comunicación privilegiada, excluyendo las de abogado-cliente, no constituirá razón para dejar de ofrecer informes como los requiere o permite esta Ley, para cooperar con el servicio de protección al menor en las actividades que contempla esta Ley o para poder aceptar u ofrecer evidencia en cualquier procedimiento judicial relacionado con el maltrato, maltrato institucional, maltrato por negligencia y/o maltrato por negligencia institucional hacia un menor.** (Énfasis nuestro.) Ley 342, *supra*.

Interpretando las disposiciones de la Ley 342, *supra*, antes señaladas, entendemos que el hecho de que no apliquen los privilegios a dichas comunicaciones no despoja a los expedientes o informes –relacionados con la investigación en un caso en que se sospeche maltrato o negligencia– del grado de confidencialidad establecido por el Art. 29 de la Ley 342, *supra*.[22]

Retomando la Ley 75, *supra*, es de rigor señalar que, su propósito y su articulado, en general prevalecen sobre la Regla 26-A por las siguientes razones, a saber: primero, la Ley 75, *supra*, es una ley especial, mientras que la Regla 26-A es una de carácter general;[23] y,

---

[22] Es dable la situación en la que haya documentos confidenciales sin la existencia de un privilegio. Véase, *Rodríguez v. Scotiabank de P.R.*, supra.

[23] Véase, *PaineWebber, Inc. v. First Boston, Inc.*, 136 D.P.R. 541 (1994); *Córdova & Simonpietri v. Crown American*, 112 D.P.R. 797 (1982).

segundo, el legislador en la nueva ley de protección de menores mantuvo disposiciones similares a la anterior. Ley 342, *supra*.[24]

Por lo cual, en los casos donde haya sospecha de maltrato o negligencia –tanto al amparo de la anterior Ley 75, *supra,* como bajo la Ley 342, *supra*, o en un pleito ordinario **sobre privación de custodia**– el privilegio consejero-víctima de delito debe ceder ante el bienestar del menor. Mientras más elementos de juicio pertinentes y confiables referentes a la situación de los menores tenga el Tribunal ante su consideración, más apropiada e idónea será la decisión que tome en el asunto.[25]

No obstante, debido al grado de confidencialidad de los expedientes e informes, el tribunal de instancia, primero, tiene que determinar si la información contenida en ellos es necesaria para resolver la controversia y si su divulgación responde a los mejores intereses de los menores. De ser su determinación en la afirmativa, el tribunal, dentro de su discreción, tiene la obligación de decidir qué información revela o no revela. Para esto, debe tomar como guías, además de los criterios señalados, entre otras cosas, el propósito de la utilización de la información dentro del pleito; si dicha información pudiera ser obtenida de modo razonable de alguna otra manera; el perjuicio de que la parte solicitante quede indefensa al no poseer la información solicitada.

Debemos distinguir el caso de autos del de *Rodríguez Del Valle v. Corcelles Ortiz*, supra. Allí no interpretamos el privilegio de la Regla 26-A, *supra*, a la luz de la Ley 75, *supra*, debido a que se trataba de un pleito de **relaciones paterno-filiales y no de privación de patria potestad y custodia,** como el de autos. Además, en *Rodríguez del Valle v. Corcelles Ortiz*, el Departamento no tuvo el tipo de participación, como en el presente caso, donde ha tenido una participación activa, tanto ante el tribunal de instancia como en las etapas apelativas.

En la situación de autos, los demandantes reclaman que tienen derecho a deponer a los funcionarios del Departamento que estuvieron a cargo de las investigaciones por alegaciones de maltrato y negligencia presentadas por los propios demandantes o a través de ellos, las cuales no prosperaron. Los recurridos aducen que no procede la toma de deposiciones porque la materia a descubrirse cae bajo una de las limitaciones, a saber: materia privilegiada.

---

[24] En *Morales v. Adm. Sistemas de Retiro*, 123 D.P.R. 589, 596-597, nota al calce núm. 3 (1989), reconocimos, citando a R.E. Bernier en *Aprobación e interpretación de las leyes en Puerto Rico*, Ed. Cultura, 1963, pág. 123, que una legislación posterior puede ser considerada al interpretar la trascendencia de una legislación anterior.

[25] Hay privilegios fundamentalmente basados en política pública, en contravención al interés cardinal de la

continúa...

[24] ...**continuación**

búsqueda de la verdad. Véase, E.L. Chiesa, *Tratado de Derecho Probatorio (Reglas de Evidencia de Puerto Rico y Federales)*, Rep. Dom., Ed. Corripio, 1998, T. I, págs. 185-186.

Sostienen que la información se encuentra cobijada por el privilegio consejero-víctima de delito.

La información a descubrirse no es privilegiada por no ser de aplicación los privilegios establecidos en las Reglas de Evidencia, excepto el de abogado-cliente, ya que existen alegaciones de negligencia y maltrato. Art. 39 de la Ley 342, *supra*. Sin embargo, tratándose de un caso de privación de custodia, la información obtenida por el Departamento, a través de sus investigaciones, es confidencial tanto bajo la Ley 75, *supra,* como bajo la Ley 342, *supra.*

En vista de ello, entendemos que el TCA debió revocar al tribunal de instancia y devolver el caso para que éste evalúe si dicha información es necesaria para resolver la controversia ante sí y si su divulgación responde a los mejores intereses de los menores. De decidir que la información no es necesaria o que su divulgación no es conveniente a los mejores intereses de los menores, los demandantes no podrán deponer a los funcionarios del Departamento. Si por el contrario, el tribunal de instancia determina lo opuesto, tiene que señalar las materias sobre las cuales los funcionarios del Departamento podrán ser depuestos.[26]

III

Procede que discutamos el error señalado por la Procuradora. En síntesis, la Procuradora sostiene que los menores no debían ser sometidos a evaluaciones psicológicas por peritos pagados por los demandantes.

Es ampliamente conocido que en los casos de custodia, los exámenes psicológicos de los menores se han convertido en un elemento indispensable en el proceso de adjudicación.[27] Esto ha provocado que se cometan múltiples abusos, ya que si una parte somete a los menores a evaluaciones por un perito privado, la otra parte también va a desear hacerlo, a pesar de que el descubrimiento de prueba no es ilimitado. Lo que convierte el angustioso proceso de adjudicación de custodia en una tediosa y extremadamente adversativa batalla de peritos, siendo los niños víctimas inocentes, quienes son sometidos a diversas evaluaciones. Véase,

---

[26] En su señalamiento de error, los demandantes plantean que la denegatoria de la toma de deposiciones de los funcionarios del Departamento hace surgir en el presente caso una cuestión sustancial, bajo el palio de la Constitución Federal y la Constitución de Puerto Rico. Es doctrina claramente establecida que declararemos la inconstitucionalidad de una ley o regla sólo cuando así sea necesario. *Departamento de la Familia v. Soto*, res. el 2 de marzo de 1999, 99 TSPR 19, 147 D.P.R. ___ (1999), 99 JTS 21; *Pueblo v. Santiago Feliciano*, res. el 9 de noviembre de 1995, 139 D.P.R. ___ (1995), 95 JTS 154; *Rivera González v. Danny´s Bakery*, 121 D.P.R. 304, 308 (1988); *Molina v. C.R.U.V.*, 114 D.P.R. 295 (1983).

En el presente caso, los demandantes propusieron, además, que, como los funcionarios son testigos del Departamento, se entienda renunciado el privilegio de la Regla 26-A de Evidencia, *supra*. Véase, *Secretario del Trabajo v. J.C. Penney Co., Inc.,* 119 D.P.R. 660 (1987). Dicho planteamiento no es meritorio. En la situación ante nos, no se trata de una renuncia al privilegio, sino de su no aplicación, lo cual, por otra parte, no despoja al expediente del Departamento de la confidencialidad que le concede la ley.

[27] Esto a pesar de no ser parte los menores bajo la Regla 32.1 de Procedimiento Civil, que regula los exámenes físicos o mentales dentro del descubrimiento de prueba.

Katheryn D. Katz, *Allegations of Abuse in Child Custody and Visitation Proceedings*, en CHILD CUSTODY AND VISITATION LAW AND PRACTICE, 1995, Vol. 4, págs. 31-117; 31-142.

Conforme expresáramos, los tribunales tienen la obligación, bajo el poder de *parens patriae* del Estado, de velar por los mejores intereses de los menores. Esto implica el tratar de minimizar el efecto adverso que pudieran causar los procedimientos en ellos. Una forma efectiva de lograrlo es nombrando un perito imparcial que lleve a cabo las evaluaciones.[28] En *Urrutia v. A.A.A.*, 103 D.P.R. 643, 652 (1975), reconocimos la facultad de los tribunales de instancia de nombrar peritos.[29]

Según indicáramos varias décadas atrás en *Bahr v. Am. Railroad Co.*, 61 D.P.R. 917, 926 (1943), "[e]l perito forense, seleccionado por y bajo el control de la corte es sin duda alguna el medio más efectivo para llegar al conocimiento de la verdad." El razonamiento detrás de esto es tratar de evitar que "los peritos sean o se conviertan en testigos particulares de las partes...logrando que su comparecencia y testimonio ante el tribunal sea sin endoso previo a cualesquiera de los litigantes." *Urrutia v. A.A.A.*, supra, citado en *San Lorenzo Trad., Inc. v. Hernández*, 114 D.P.R. 704, 711 (1983). En *Centeno Alicea v. Ortiz*, 105 D.P.R. 523, 525 (1977), la controversia estaba trabada entre la madre y la abuela por la custodia de un menor. Allí señalamos que "[l]os peritos de la demandante, como generalmente ocurre cuando son peritos de parte, favorecen la posición de la demandante, y los de la demandada favorecen la posición de ésta." Véase también, Chiesa, *op. cit.,* 585-586. Con el nombramiento de un perito del tribunal se evita la dilación innecesaria en la tramitación de los casos, especialmente en los casos de urgencia como son los de privación de patria potestad y custodia. *Urrutia v. A.A.A.*, supra, pág. 649.

Es importante destacar que el hecho de que el tribunal nombre un perito no supone que las partes queden despojadas de presentar sus propios peritos. Sin embargo, en los casos donde están envueltos los intereses de un menor, el derecho a presentar peritos privados está

---

[28] "La función del testimonio pericial es ayudar al juzgador, tanto para entender la evidencia como para adjudicar un hecho en controversia." Chiesa, *op. cit.*, pág. 584. Véase también, *Meléndez v. Levitt & Sons of P.R.*, 104 DPR 797 (1976).

[29] En lo pertinente, la Regla 59 de Evidencia de 1979, *Nombramiento de perito por el tribunal*, dispone:

(A) Nombramiento. Antes del comienzo del juicio o durante el transcurso de éste, cuando el tribunal determine que es necesaria prueba pericial, **podrá de su propia iniciativa, o a solicitud de parte, nombrar uno o más peritos para que investiguen y sometan un informe según**

continúa...

[28] ...continuación
**lo ordene el tribunal, o para que declaren en calidad pericial en el juicio.** El tribunal determinará la compensación de los servicios del perito. (Énfasis nuestro). 32 L.P.R.A. Ap. IV R. 59.

limitado por el requisito de demostrar que dichos peritos son necesarios para la resolución de la controversia.

En *Otero v. Delbrey*, res. el 22 de enero de 1998, 98 TSPR 2, 144 D.P.R. ___, 98 JTS 2, reconocimos que un tribunal puede, dentro de su facultad discrecional, ordenar exámenes físicos o mentales a menores de edad, aunque éstos no sean propiamente partes en el pleito. Para ello, el Tribunal tiene que "sopesar los efectos adversos que pueda tener la intromisión personal que representa dicho examen." *Íd.*, pág. 471. En síntesis, expresamos que para que una parte pueda someter a un menor víctima de alegado abuso sexual a una evaluación psicológica, en casos de patria potestad, custodia o relaciones paterno-filiales, debe demostrar que la misma es necesaria, que justifique la intrusión al derecho de intimidad del menor; y, así evitar la posibilidad de daños emocionales al realizar evaluaciones innecesarias. Con lo allí resuelto estaba implícito que las partes pueden solicitar evaluaciones psicológicas de los menores por peritos privados en casos relacionados con la patria potestad o custodia.

Armonizando *Otero v. Delbrey*, *supra*, con lo antes expuesto, entendemos que en los casos en que el tribunal haya nombrado un perito para evaluar psicológicamente al menor, el examen psicológico por un perito privado sólo debe proceder cuando la parte demuestra una clara necesidad de llevar a cabo el mismo, ya que el realizado por el perito del tribunal fue insuficiente, inadecuado o que dicho perito no posee el conocimiento o medios para efectuar el examen necesario. En esta situación, el tribunal podrá nombrar como perito a otro que tenga las cualificaciones necesarias, o acceder al examen por un perito nombrado por la parte que lo solicita.

En el caso de autos, el tribunal ha nombrado un perito para llevar a cabo las evaluaciones psicológicas de los menores. Los demandantes alegan que los niños son las verdaderas partes en el pleito y que el estado mental de éstos envuelve una controversia legítima y crucial.[30] También aducen que los niños no han sido previamente evaluados psicológicamente por peritos seleccionados por ellos, ni por perito alguno seleccionado o recomendado por el Programa de Relaciones de Familia del Tribunal de Primera Instancia, ni por el Departamento.[31] Por lo cual, tras ordenar la realización de las evaluaciones psicológicas por su perito, el tribunal, bajo su discreción, permitiría pruebas adicionales realizadas por peritos privados, sólo de así solicitárselo la parte interesada y demostrar la necesidad de tales evaluaciones.

En vista de lo anterior, coincidimos con la sentencia hoy dictada, la cual revoca el dictamen emitido por el Tribunal de Circuito de Apelaciones.

---

[30] Alegato de los Demandantes-Peticionarios de 11 de agosto de 1998, págs. 7-20.

                                        BALTASAR CORRADA DEL RIO
                              JUEZ ASOCIADO

---

[31] *Íd.*, pág. 5-6.