ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| ERIC EMMANUEL SOTO CRUZ<br><br>Parte Recurrida<br><br>v.<br><br>MARIELI SÁNCHEZ MATEO<br><br>Parte Peticionaria | KLAN202400649 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Aibonito<br><br>Civil Núm.: AI2023RF00149<br><br>Sobre: Alimentos |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Rodríguez Flores, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de octubre de 2024.

Comparece la señora Marieli Sánchez Mateo (Sra. Sánchez Mateo) y solicita que revoquemos la *Resolución* emitida el 28 de mayo de 2024, y notificada el 30 de mayo de 2024, por el Tribunal de Primera Instancia (TPI), Sala Superior de Aibonito. Mediante el referido dictamen, el foro primario acogió las recomendaciones de un informe social forense emitido por la Unidad Social de Relaciones de Familia y Asuntos de Menores del Tribunal y dictó resolución de conformidad.

El 6 de agosto de 2024, el apelado, Sr. Eric Manuel Soto Cruz (Sr. Soto Cruz) presentó su alegato en oposición.

Evaluados los escritos y los documentos que obran en el expediente, y a tenor con el derecho aplicable, se confirma el dictamen apelado.

**I.**

Las partes son los progenitores de J.E.S.S. y L.E.S.S., nacidos el 23 de julio de 2017 y el 9 de enero de 2019, respectivamente.

Desde diciembre de 2022, los menores se encuentran bajo la custodia del Sr. Soto Cruz.

El 24 de abril de 2023, el Sr. Soto Cruz presentó ante el TPI una demanda contra la Sra. Sánchez Mateo, en la que solicitó alimentos y la custodia monoparental de los menores. En síntesis, alegó que la madre no custodio compartía ocasionalmente con los menores e igualmente suplía dinero para cubrir las necesidades básicas de éstos, aunque no de forma consistente. El Sr. Soto Cruz afirmó que él es quien ha tenido el rol principal en el desarrollo de los menores. Por consiguiente, solicitó la custodia monoparental, que se fijara a la Sra. Sánchez Mateo una pensión alimentaria para beneficio de los menores, que se estableciera un plan de relaciones maternofiliales y que se prohibiera que los menores salieran de la jurisdicción sin la autorización escrita del padre custodio o un permiso del tribunal.

En su contestación a la demanda, la Sra. Sánchez Mateo sostuvo que las partes tienen un acuerdo de custodia compartida, razón por la cual no existe un pago estructurado por concepto de pensión alimentaria. Por otro lado, estuvo de acuerdo en que los menores no abandonaran la jurisdicción sin permiso del tribunal. Finalmente, se opuso a que se concediera la custodia monoparental al Sr. Soto Cruz y solicitó que se le concediera a ella la custodia exclusiva de sus hijos, recalcando que ello redundaba en el mejor bienestar de los menores.

El 14 de septiembre de 2023, y a tenor con la recomendación de la examinadora de pensiones alimentarias de igual fecha, el TPI dictó una resolución mediante la cual provisionalmente impuso a la Sra. Sánchez Mateo una pensión alimentaria para beneficio de los menores. Posteriormente, emitió una *Resolución y Orden* el 18 de octubre de 2023, en la que concedió la custodia provisional de los menores al Sr. Soto Cruz y estableció un plan de relaciones

maternofiliales. Más adelante, impartió su aprobación a otras recomendaciones de la examinadora de pensiones alimentarias y el 29 de noviembre de 2023, dictó *Sentencia* fijando la pensión alimentaria permanente.

Así las cosas, y luego de varios trámites procesales, el 16 de abril de 2024, la señora Karol P. Pérez Carpena, trabajadora social de la Unidad Social de Relaciones de Familia y Asuntos de Menores del Tribunal, presentó una *Moción Informativa de la Unidad Social, sobre Presentación del Informe*. Adujo que finalizó su intervención en el caso y que el informe social forense estaba disponible para la consideración del tribunal.

Ante ello, el 17 de abril de 2024, notificada el 24 de abril de 2024, el TPI dictó una orden mediante la cual notificó a los abogados de las partes el informe social forense. También, concedió quince (15) días a las partes para mostrar causa por la cual el tribunal no debía acoger las recomendaciones del informe social. La orden apercibió que, decursado el término sin que las partes fijaran su posición, el tribunal entendería que éstas estarían conformes con las recomendaciones. A su vez, indicó que la parte que estuviera en desacuerdo con las recomendaciones del informe tendría los mismos quince (15) días para presentar un escrito exponiendo los fragmentos específicos y los fundamentos en que basa la solicitud de impugnación del informe social. Notificarían, además, si contratarían un perito, en cuyo caso deberían compartir su *curriculum vitae* con la otra parte. El promovente presentaría también, dentro del mismo término, el listado de los testigos, con una breve descripción sobre lo que declararían, así como de los documentos que proponía presentar en la vista de impugnación. Por último, el tribunal advirtió a las partes que, de no comparecer por escrito dentro del término concedido, podría dictar sentencia o

resolución, según procediera, acogiendo las recomendaciones contenidas en el informe social, sin más citarle ni oírle.

El referido término de quince (15) días vencía el 9 de mayo de 2024. No obstante, el 3 de mayo de 2024, la Sra. Sánchez Mateo presentó una solicitud de prórroga, en la que pidió que se le concediera hasta el 24 de mayo de 2024, para fijar su posición sobre el informe. Aseveró que "por cuestiones de salud y de tipo militar" de su abogado todavía se encontraba en el proceso de evaluación del informe social. Igualmente, la Sra. Sánchez Mateo informó sobre su intención de impugnar el informe y de contratar un perito.

El 8 de mayo de 2024, el TPI notificó la orden en la que concedió la prórroga solicitada por la Sra. Sánchez Mateo. En dicha orden, advirtió que "[t]ranscurrido el término concedido sin cumplir con lo ordenado el tribunal acogerá las recomendaciones de la Unidad Social y emitirá resolución".[1]

Por su parte, el Sr. Soto Cruz presentó una *Moción en torno a Informe Social Forense* en la que comunicó estar de acuerdo con las recomendaciones del documento.

El 28 de mayo de 2024, el TPI dictó la *Resolución* objeto del presente recurso. En ésta, consignó que había transcurrido el término concedido para que la Sra. Sánchez Mateo expresara su posición en cuanto al informe social forense, razón por la cual daba el asunto por sometido sin reparo. Así pues, acogió las recomendaciones del informe social y dictó resolución de conformidad. Consecuentemente, adjudicó la custodia monoparental de los menores J.E.S.S. y L.E.S.S. al Sr. Soto Cruz. Así también, estableció el plan de relaciones maternofiliales.

En desacuerdo, el 3 de junio de 2024, la Sra. Sánchez Mateo presentó una *Solicitud de Reconsideración.* Allí expresó que su

---

[1] Apéndice del recurso, pág. 24.

representante legal presta servicio militar activo en la Guardia Nacional de Puerto Rico y que, durante todo el mes de mayo de 2024, padeció de ciertas condiciones graves de salud por las que estuvo tomando medicamentos controlados, cuyos efectos narcóticos le impidieron comparecer dentro del plazo concedido ante el tribunal. Mencionó que el día en que el tribunal notificó la resolución acogiendo las recomendaciones de la trabajadora social, el Departamento de Asuntos de los Veteranos de los Estados Unidos adjudicó a su abogado, el Lcdo. Ariel Irizarry Velázquez, un "100% de pensión".[2] La Sra. Sánchez Mateo sostuvo que los hechos anteriormente relatados justificaban extender la prórroga que se le concedió para presentar su posición en cuanto al informe social. Por último, informó que desistía de presentar prueba pericial para impugnar el referido informe. En virtud de lo anterior, la Sra. Sánchez Mateo solicitó al tribunal que dejara sin efecto su resolución de 28 de mayo de 2024 y citara a las partes a la vista de impugnación del informe.

El 5 de junio de 2024, el TPI notificó una resolución con la siguiente determinación:

> No Ha Lugar a la Solicitud de Reconsideración. La parte demandada no ha expuesto las partes específicas y los fundamentos en que basa la solicitud de impugnación del informe social. (Mayúsculas suprimidas).[3]

Inconforme, el 8 de julio de 2024, la Sra. Sánchez Mateo presentó el recurso que nos ocupa y apuntó el siguiente señalamiento de error:

> Erró el Honorable Tribunal de Primera Instancia al abusar de su discreción al no permitir que la parte recurrente presentara su posición sobre informe social

---

[2] *Íd.,* pág. 29. La moción se acompañó con copia de una comunicación escrita cursada el 30 de mayo de 2024, por el Departamento de Asuntos del Veterano al Lcdo. Ariel Irizarry-Velázquez, abogado de la Sra. Sánchez Mateo, que lee "[t]his letter will guide you through the information you should know and steps you may take now that VA has made a decision about your benefits". *Íd.,* pág. 32. También se anejó una captura de pantalla (*screenshot*) que contiene una imagen del portal de la agencia federal que conduce a la información concerniente a los beneficios de incapacidad. *Íd.,* pág. 33.
[3] *Íd.,* pág. 31.

por condición de salud de su representante legal siendo este un término de cumplimiento estricto el cual admite justa causa.

En síntesis, arguye que el TPI erró al negarle la oportunidad de impugnar el informe social forense por haber transcurrido el término concedido para ello, a pesar de que justificó las razones para la dilación.

**II.**

A diferencia de los plazos jurisdiccionales, un tribunal tiene discreción para prorrogar los términos de cumplimiento estricto, pero no puede hacerlo de manera automática.[4] Los tribunales solamente tienen discreción para prorrogar tales términos cuando se demuestra que la dilación se debió a justa causa.[5] De lo contrario, carecen de discreción para tales fines.

En cuanto a las razones para sustentar la justa causa, el Tribunal Supremo ha expresado que: "[n]o es con vaguedades, excusas o planteamientos estereotipados que se cumple con el requisito de justa causa, sino con explicaciones concretas y particulares, debidamente evidenciadas, que le permitan al tribunal concluir que la tardanza o demora ocurrió razonablemente, por circunstancias especiales".[6]

A tenor con lo anterior, los tribunales pueden eximir a un tribunal del requisito de observar fielmente un término de cumplimiento estricto si están presentes las siguientes dos condiciones: (1) que en efecto exista justa causa para la dilación, y (2) que la parte demuestre detalladamente al tribunal las bases razonables que tiene para la demora; es decir, que la parte interesada acredite de manera adecuada la justa causa aludida.[7] El

---

[4] *Rosario Domínguez et als. v. ELA et al,* 198 DPR 197, 210 (2017); *Rojas v. Axtmayer Ent., Inc.,* 150 DPR 560, 564 (2000).
[5] *Íd.*; *Rivera Marcucci v. Suiza Dairy Inc.,* 196 DPR 157, 171 (2016); *Toro Rivera et als. v. ELA et al.,* 194 DPR 393, 414-415 (2015).
[6] *Rojas v. Axtmayer Ent., Inc.,* 150 DPR 560, 565 (2000).
[7] *Íd.*

que no se cause perjuicio a la otra parte no es determinante para la acreditación de la justa causa.[8]

Cónsono con ello, Tribunal Supremo ha expresado que, a falta de justa causa, y ante excusas vagas y generales, los tribunales no gozan de discreción para prorrogar los términos de cumplimiento estricto.[9] Además, ha indicado que "es un deber acreditar la existencia de justa causa, incluso antes de que un tribunal se lo requiera, si no se observa un término de cumplimiento estricto".[10]

La alegación de una parte de que su incumplimiento con un término de cumplimiento estricto se debió al estado crítico de salud de su representante legal -debidamente evidenciado- puede constituir la justa causa a que el Tribunal Supremo ha hecho referencia en sus decisiones.[11]

**III.**

En el presente caso, y con el propósito de justificar la justa causa para la demora en cumplir con lo requerido dentro del plazo provisto por el foro primario, la Sra. Sánchez Mateo incluyó en el apéndice del recurso documentos adicionales, no presentados ante el TPI, para evidenciar la condición de salud de su abogado.[12]

Advertimos que la Regla 74 (B) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 74 (B), establece que los

---

[8] *Rosario Domínguez et als. v. ELA et al,* pág. 211.
[9] *Div. Empleados Públicos UGT v. CEMPR,* 212 DPR 742, 751 (2023), citando a *Rivera Marcucci et al. v. Suiza Dairy,* supra, pág. 170; *Soto Pino v. Uno Radio Group,* 189 DPR 84, 92-93 (2013).
[10] *Soto Pino v. Uno Radio Group,* supra, pág. 97.
[11] *Rojas v. Axtmayer Ent., Inc.,* supra*,* págs. 565-566.
[12] Los documentos adicionales incluidos en el apéndice del recurso fueron los siguientes: (1) carta fechada 5/8/2024, cursada por el *Veternans Evaluation Services* al abogado de la Sra. Sánchez Mateo, notificándole la fecha de su cita para evaluación; (2) una segunda carta fechada 5/8/2024, cursada por el *Veternans Evaluation Services* al abogado de la Sra. Sánchez Mateo, notificándole la fecha de una segunda cita de evaluación; (3) documento titulado *Instrucciones a seguir para pacientes de sala de emergencias* del Centro de Servicios de Salud Dr. Juan M. Santiago de Guánica, fechado 5/12/24, dirigido y firmado como recibido por el abogado; (4) otro documento titulado *Instrucciones a seguir para pacientes de sala de emergencias* del Centro de Servicios de Salud Dr. Juan M. Santiago de Guánica, fechado 5/17/24 -que contiene un referido a un fisiatra- dirigido y firmado como recibido por el abogado. *Íd.,* págs. 34-37.

apéndices de los recursos sólo contendrán los documentos que formen parte de los autos del Tribunal de Primera Instancia.

Sin embargo, tomamos nota de lo resuelto por el Tribunal Supremo en *Rojas v. Axtmayer, Inc.,* 150 DPR 560 (2000), al atender una situación en la que una parte adujo que la condición de salud de su representante legal provocó que ésta incumpliera con el plazo de cumplimiento estricto que provee el Reglamento del Tribunal de Apelaciones para notificar la presentación de un recurso a la parte contraria. Expresó el tribunal:

> Es correcto que, en su comparecencia original, la parte demandante no presentó evidencia fehaciente de dicha enfermedad. Somos del criterio, sin embargo, que antes de decretar la desestimación del recurso, *el foro apelativo intermedio debió haberle brindado una oportunidad a dicha parte para que así lo demostrara mediante la presentación de evidencia fehaciente a esos efectos.* Erró el Tribunal de Circuito de Apelaciones al actuar con la premura que lo hizo.[13]

Por ello, evaluamos los documentos adicionales sometidos ante nos por la Sra. Sánchez Mateo para justificar las razones para no haber cumplido con el término concedido por el TPI para que expresara su posición en cuanto al informe social forense.

La Sra. Sánchez Mateo presentó evidencia de que su abogado fue citado para evaluación médica a realizarse los días 5/13/2024 y 5/14/2024 y que éste también visitó una sala de emergencias los días 12 y 17 de mayo de 2024, siendo referido en esta última ocasión a un fisiatra. También incluyó copia de una comunicación con instrucciones generales cursada por el Departamento de Asuntos del Veteranos al abogado, y una captura de pantalla (*screenshot*) que contiene una imagen del portal de la agencia federal que conduce a información concerniente a los beneficios de incapacidad. Sin embargo, no se acompañó evidencia que acreditara que la condición de salud del abogado, o los medicamentos narcóticos o tratamientos

---

[13] *Rojas v. Axtmayer., Inc.,* supra, pág. 566.

a los que se alude en los escritos, le impidieran cumplir oportunamente con los requerimientos del tribunal apelado. Así pues, los documentos presentados resultan insuficientes para justificar el incumplimiento con el término concedido por el TPI para refutar el informe social.

De los autos se desprende que, presentado el informe social ante la consideración del TPI, dicho foro concedió término a las partes para mostrar causa por la cual no debía acoger las recomendaciones del informe. La orden apercibió que, decursado el término sin que las partes fijaran su posición, el tribunal entendería que éstas estarían conformes con las recomendaciones. El TPI también advirtió a las partes que, de no comparecer por escrito dentro del término concedido, podría dictar sentencia o resolución, según procediera, acogiendo las recomendaciones contenidas en el informe social, sin más citarle ni oírle.

El Sr. Soto Cruz fue quien único presentó una moción en la que informó estar conforme con las recomendaciones del informe social. La Sra. Sánchez Mateo no presentó objeción alguna al informe, a pesar de la prórroga que se le concedió para ello. Tampoco presentó sus objeciones en su moción de reconsideración. Solamente se ha intentado justificar su incumplimiento con el término concedido para objetar. Por tanto, y contrario a lo que plantea la Sra. Sánchez Mateo, el foro sentenciador no le privó de su derecho a fijar su posición en cuanto al informe social.

La custodia es un componente de la patria potestad porque impone a los padres el deber primario de tener a sus hijos no emancipados bajo su compañía.[14] Es decir, la custodia es la tenencia o control físico que tiene un progenitor sobre los hijos.[15]

---

[14] *Jusino González v. Norat Santiago,* 211 DPR 855, 863 (2023).
[15] *Íd.*

Al adjudicar la custodia de un menor, los tribunales, en su función de *parens patriae,* están llamados a utilizar como criterio rector el bienestar y los mejores intereses de éste.[16] De ahí que la decisión de un tribunal en torno a la custodia de un menor debe tomarse luego de realizar un análisis objetivo sereno y cuidadoso de todas las circunstancias presentes en el caso ante sí, teniendo como único y principal objetivo el bienestar de los menores.[17]

La custodia compartida es la obligación de ambos progenitores de ejercer directa y totalmente todos los deberes y las funciones que conlleva la patria potestad de los hijos, relacionándose el mayor tiempo posible y brindándoles la compañía y atención que se espera del progenitor responsable.[18]

En otro extremo, la custodia exclusiva se refiere a cuando ésta se asigna a un solo progenitor. En particular:

> La custodia del hijo, acompañada o no del ejercicio exclusivo de la patria potestad, puede asignarse a un solo progenitor:
> (a) Mientras se ventila el proceso de divorcio o de nulidad del matrimonio;
> (b) luego de decretada la disolución o anulado el matrimonio; o
> (c) cuando hay diferencias irreconciliables o reiteradas entre los progenitores que afectan significativamente la crianza razonada, responsable y efectiva del hijo.
> En estos casos no puede entorpecerse o prohibirse el contacto del otro progenitor con su hijo, aunque puede regularse en las circunstancias y del modo que autoriza este Código.[19]

Sobre los criterios a considerar en toda determinación de custodia, el Código Civil establece los siguientes:

> (a) La salud mental de ambos progenitores y de los hijos;
> (b) el nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores;
> (c) si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar;
> (d) la capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras;

---

[16] *Íd.,* pág. 864; *Muñoz Sánchez v. Báez De Jesús*, 195 DPR 645, 651 (2016); *Rexach* v. *Ramírez*, 162 DPR 130, 147-148 (2004); *Peña* v. *Peña*, 152 DPR 820, 832-833 (2000).

[17] *Jusino González v. Norat Santiago*, supra.

[18] Artículo 602 del Código Civil (32 LPRA sec. 7281).

[19] Artículo 606 del Código Civil (32 LPRA sec. 7285).

(e) el historial de cada progenitor en la relación con sus hijos;

(f) las necesidades específicas de cada uno de los hijos menores cuya custodia se solicita;

(g) la relación del hijo con sus progenitores, sus hermanos y otros miembros de la familia;

(h) la capacidad, disponibilidad y compromiso de los progenitores de asumir la responsabilidad de criar los hijos conjuntamente;

(i) la razón o los motivos de los progenitores para solicitar la custodia compartida;

(j) si la profesión u oficio que ejercen los progenitores no es un impedimento para ejercer una custodia compartida;

(k) si la ubicación y distancia entre las residencias de los progenitores perjudica la educación del hijo;

(l) la comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos; y

(m) cualquier otro criterio que pueda considerarse para garantizar el interés óptimo de los hijos.[20]

Del análisis detenido del expediente electrónico del caso en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), incluido el informe social forense, se desprende que la determinación del foro primario de acoger la recomendación del informe social y conceder la custodia exclusiva de los menores al Sr. Soto Cruz se hizo en protección de los mejores intereses y bienestar de los menores, luego de realizar un análisis basado en los derechos protegidos y los criterios a considerar para una determinación de custodia. Nada en el expediente judicial demuestra lo contrario. Tampoco la Sra. Sánchez Mateo nos ha puesto en posición de variar la determinación apelada.

Por tanto, concluimos que el TPI cumplió con su responsabilidad de *parens patriae*, utilizando como criterio rector el bienestar y los mejores intereses de los menores, adherido a las garantías y salvaguardas del debido proceso de ley. Así pues, no se cometió el error señalado.

Por último, recordemos que las determinaciones de custodia no constituyen cosa juzgada, ni son estrictamente finales ni

---

[20] Artículo 605 del Código Civil (32 LPRA sec. 7283).

definitivas, ya que pudieran surgir hechos y circunstancias posteriores al dictamen que requieran que se modifiquen.[21]

**IV.**

Por los fundamentos expuestos, confirmamos el dictamen apelado.

**Notifíquese.**

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[21] *Jusino González v. Norat Santiago,* supra, pág. 866.