Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| CHRISTIAN RIVERA MEDINA<br><br>**PETICIONARIO**<br><br>v<br><br>YARITZA ACEVEDO SALAS<br><br>**RECURRIDA** | TA2025AP00010 | *Apelación acogida como Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso Núm. FA2022RF00006<br><br>Sobre: Ruptura Irreparable |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Rodríguez Flores.

# RESOLUCIÓN

En San Juan, Puerto Rico, a 29 de julio de 2025.

## I.

El 16 de junio de 2025, el señor Christian Rivera Medina (señor Rivera Medina o peticionario), presentó digitalmente un *Recurso de apelación* en el cual solicitó que revoquemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo (TPI o foro primario), el 16 de mayo de 2025, notificada y archivada digitalmente en autos el mismo día.[1] En la referida *Resolución,* el TPI declaró No Ha Lugar la solicitud presentada por el peticionario en cuanto a la designación de un perito privado, a ser costeado por el señor Rivera Medina, para agilizar el proceso de descartar o validar las alegaciones de abuso sexual en el interés optimo de los menores, hijos de las partes.

El 23 de junio de 2025, emitimos una *Resolución* en la que acogimos el recurso como un *certiorari,* toda vez que se recurre de una determinación interlocutoria emitida por el TPI. Además, le

---

[1] Véase la Entrada Núm. 204 del expediente digital del caso en el Sistema Unificado de Manejo y Administración del Caso (SUMAC) del TPI.

concedimos diez (10) días a la señora Yaritza Acevedo Salas (parte recurrida) para exponer su posición respecto a los méritos del recurso.

El 3 de julio de 2025, la parte recurrida por conducto de su representación legal, presentó su posición en oposición al recurso de *certiorari,* en la que sostuvo que el TPI no incurrió en un abuso de su discreción judicial. En consecuencia, solicita la desestimación del recurso presentado por la parte peticionaria.

Contando con el beneficio de la comparecencia de las partes damos por perfeccionado el recurso y, en adelante, pormenorizamos los hechos procesales más relevantes del caso.

## II.

El caso de marras tiene sus génesis el 10 de enero de 2022, cuando el señor Rivera Medina presentó una *Demanda sobre divorcio* por ruptura irreparable contra la señora Acevedo Salas.[2] Mediante esta, el peticionario solicitó la custodia compartida de sus hijos menores de edad.

El 14 de febrero de 2022, la parte recurrida radicó una Contestación a la demanda en la cual presentó su oposición a la solicitud de la custodia compartida, solicito así la custodia monoparental a su favor, y así, además, solicitó que se decretará como Hogar seguro la vivienda conyugal perteneciente a la Sociedad Legal de Gananciales ubicada en el pueblo de Rio Grande, Puerto Rico.[3]

Así las cosas, el 28 de febrero de 2022, el TPI dicto *Sentencia* en la cual declaró disuelto el vínculo matrimonial y acogió las estipulaciones de las partes sobre las relaciones paternofiliales de

---

[2] Véase, Entrada Núm. 1 en SUMAC del TPI.
[3] Véase, Entrada Núm. 20 en SUMAC del TPI.

los menores, además declaró el hogar conyugal como Hogar seguro en favor de los menores.[4]

Posteriormente, el 8 de marzo de 2022, el TPI emitió una *Orden* en la que le ordenó a la Unidad de Trabajo Social de Relaciones de Familia realizar un Estudio Social Forense sobre la adjudicación de custodia.[5]

El 5 de mayo de 2022, el peticionario le notificó al TPI la intervención unilateral de las relaciones paternofiliales por parte de la recurrida.[6] Consecuentemente, el 27 de mayo de 2022, el TPI, mediante una *Resolución,* le ordenó a la parte recurrida entregar a los menores en el hogar seguro a las 10:00 a.m. en las fechas que no tuvieran cuido y estableció horarios específicos para las llamadas telefónicas.[7]

El peticionario informó que el 17 de junio de 2022, se celebró una vista en la Sala Municipal de Fajardo para atender las solicitudes de Órdenes de Protección presentadas por la aquí recurrida, la señora Acevedo Salas, una al amparo de la Ley 54, 8 LPRA sec. 601 *et seq.*,. (sobre Violencia de Género) y otra bajo la entonces vigente Ley 246, 8 LPRA ant. secs. 1101 *et seq.* (sobre Maltrato de Menores), hoy derogada.[8] El 23 de junio de 2022, la señora Sylkia D. Rodríguez Alicea, Trabajadora Social designada al caso, recomendó al TPI la realización de un estudio pericial privado, como parte del proceso para sustentar las alegaciones de presuntos actos lascivos hacia los menores.[9] Además, recomendó que el costo del estudio fuera sufragado en partes iguales por el peticionario y la parte recurrida.[10] Como resultado de la investigación realizada por

---

[4] Véase, Entrada Núm. 27 en SUMAC del TPI.
[5] Véase, Entrada Núm. 30 en SUMAC del TPI. Notificado y archivado digitalmente en autos el 9 de marzo de 2022.
[6] Véase, Entrada Núm. 37 en SUMAC del TPI.
[7] Véase, Entrada Núm. 46 en SUMAC del TPI. Notificado y archivado digitalmente el mismo día.
[8] Véase, Entrada Núm. 53 en SUMAC del TPI.
[9] Véase, Entrada Núm. 56 en SUMAC del TPI.
[10] Íd,.

el Dr. Larry Alicea (perito designado por las partes) sobre alegado abuso sexual, este concluyó entre cosas, que no ocurrió el alegado abuso sexual.[11] Consecuentemente, el 13 de diciembre 2022, la Sala Municipal de Fajardo, mediante una *Resolución* denegó expedir la Orden de Protección bajo la Ley 54 solicitada.[12] Del mismo modo, en cuanto a la Orden de Protección bajo la Ley 246 en proteccion de los menores, la recurrida desistió del caso.[13]

El 19 de diciembre de 2022, el foro primario emitió una Orden acogiendo las recomendaciones de la Trabajadora Social y autorizó el comienzo de las relaciones paternofiliales supervisadas.[14]

El 28 de abril de 2023, el señor Rivera Medina le solicito al TPI que se reanudarán las relaciones paternofiliales dispuestas por sentencia.[15] Del mismo modo, la señora Acevedo Salas presentó su oposición al respecto, solicitó que las relaciones paternofiliales fueran restablecidas gradualmente.[16]

Tras varios incidentes procesales, el 6 de noviembre de 2023 y notificada el 7 de noviembre de 2023, el TPI dictó una *Resolución* Provisional en la que estableció el plan paternofilial de forma provisional.[17] Luego de dictada la *Resolución,* y mientras aún estaba por presentarse el Informe Social, el peticionario solicitó la custodia monoparental de los menores. El Informe Social, rendido por la Unidad de Trabajo Social no recomendó la custodia compartida, debido, entre otras cosas, a los problemas de comunicación entre las partes. En su lugar, recomendó la ampliación de las relaciones paternofiliales.[18] El 12 de febrero de 2024, el TPI, mediante

---

[11] Véase, Entrada Núm. 142 en SUMAC del TPI, anejos de la moción.
[12] Véase, Entrada Núm. 72 en SUMAC del TPI, anejos de la moción.
[13] Íd.
[14] Véase, Entrada Núm. 76 en SUMAC del TPI. Notificada y archivada digitalmente el 20 de diciembre de 2022.
[15] Véase, Entrada Núm. 77 en SUMAC del TPI.
[16] Véase, Entrada Núm. 90 en SUMAC del TPI.
[17] Véase, Entrada Núm. 137 en SUMAC del TPI.
[18] Véase, Entrada Núm. 142 en SUMAC del TPI, anejos de la moción en la pág. 98.

Resolución, acogió los acuerdos entre las partes, concediendo un plan de relaciones paternofiliales amplio.[19]

La parte recurrida informó que el 27 de enero de 2025, en el TPI, Sala Municipal de Fajardo, se expidió una Orden de Protección *ex parte* bajo la Ley 57-2023, por hechos ocurridos el 22 de enero de 2025, por alegados actos lascivos y/o agresión sexual perpetrados por el progenitor contra los menores.[20] La Orden de Protección tendría una vigencia desde el 27 de enero de 2025 hasta el 14 de febrero de 2025, el asunto fue referido al Departamento de la Familia (DF).[21]

El 24 de marzo de 2025, un día antes de celebrarse la vista final de la Orden de Protección, el peticionario solicitó la actualización de la evaluación pericial privada del caso anterior, realizada por el Dr. Larry Alicea, por las alegaciones de actos lascivos que en esta ocasión involucraban a los menores.[22] El 25 de marzo de 2025, el TPI, mediante una *Orden*, dispuso que "se esperaría por la culminación de los procesos de la Orden de Protección al amparo de la Ley 57-2023, según enmendada.[23] En vista de ello, el 26 de marzo de 2025, la parte recurrida presento moción de oposición arguyendo que "era innecesaria y onerosa para las partes, puesto que ya había sido referido una evaluación pericial forense por el DF al Centro CAVV y estos se encargarián de evaluar las alegaciones de abuso sexual hechas por los menores".[24] Consecuentemente, el TPI la declaró Ha Lugar, sosteniéndose en lo anteriormente dispuesto.[25]

Según alega la parte recurrida, el 24 de marzo de 2025, previa celebración de la vista, el DF rindió un informe realizado por la

---

[19] Véase, Entrada Núm. 162 en SUMAC del TPI. Notificada y archivada digitalmente el mismo día.
[20] Véase, Entrada Núm. 185 en SUMAC del TPI.
[21] Íd.
[22] Véase, Entrada Núm. 187 en SUMAC del TPI.
[23] Véase, Entrada Núm. 188 en SUMAC del TPI.
[24] Véase, Entrada Núm. 189 en SUMAC del TPI.
[25] Véase, Entrada Núm. 190 en SUMAC del TPI.

Trabajadora Social asignada al caso. Del contenido del informe se desprende que el DF confirmó las expresiones de los menores sobre los eventos que se recogen en la Orden de Protección, y que existían elementos suficientes para la aceptación del referido, con el propósito de realizar evaluaciones relacionadas con las alegaciones por sospecha de abuso sexual. Así mismo, del informe de desprende que el DF refirió el caso al CAVV-PITI para descartar o validar las alegaciones.[26] Del mismo modo, como parte de las entrevistas realizadas por la Trabajadora Social, la Dra. Sanabria, psicóloga clínica, manifestó que las expresiones y conductas de los menores eran consistentes con las alegaciones de abuso sexual.[27]

Consecuentemente, el 25 de marzo de 2025, se celebró la vista en su fondo ante el TPI, en la cual, tras desfilar la prueba, se expidio Orden de Protección final al amparo de la Ley 57, *supra,* por el término de un (1) año, a base del informe presentado por la Trabajadora Social de la Unidad de Investigaciones Especiales y de Emergencia del Departamento de la Familia. El foro primario determinó que existía una probabilidad sustancial de riesgo inmediato de maltrato, y como consecuencia expidió una Orden de Protección en favor de los menores. En la Orden de protección emitida, se hizo constar que ambas partes comparecierón a la celebracion de la vista, el aquí peticinario reclamó su derecho a permanecer en silencio debido a que había comenzado una investigacion criminal en su contra.[28]

El 24 de abril de 2025, el peticionario presentó una Moción Urgente en solicitud de Orden sobre Patria Potestad, entre los remedios solicitados, solicitaba obtener información en cuanto a los menores de los asuntos academicos, copia del expediente médico de

---

[26] Véase, Entrada Núm. 189 en SUMAC del TPI.
[27] Íd., Anejos de la moción.
[28] Íd.

las evaluaciones fisicas y/o hallazgos.[29] Consecuentemente, el 30 de abril de 2025, el TPI declaró No Ha lugar la Moción presentada por el peticionario.[30]

El 14 de mayo de 2025, la parte peticionaria presentó una Moción de Reconsideración de la Resolución Interlocutoria del 30 de abril de 2025, en la que solicitó entre otros remedios, la autorización del tribunal para la intervención y evaluación forense independiente de la Dra. Ana Rosa Diaz Miranda, en aras de agilizar los procesos del DF.[31] La parte recurrida presentó Moción en Oposición. El 15 de mayo de 2025, el TPI declaró No Ha Lugar la designación de perito privado independiente.[32] El 16 de mayo de 2025, el peticionario reiteró su solicitud de la necesidad a un perito independiente, ese mismo día el TPI declaró No Ha Lugar la solicitud. [33]

El 21 de mayo de 2025, la parte recurrida presentó solicitud de traslado del caso al área oeste.[34] El 9 de junio de 2025, mediante *Resolución,* notificada y archivada digitalmente el 10 de junio de 2025, el TPI declaró No Ha Lugar la solicitud de traslado hasta tanto no se culminé la investigación.[35]

Inconforme con la *Resolución* emitida por el TPI, el peticionario recurre ante este Tribunal y formula los siguientes señalamientos de error:

> Erró el Tribunal de Primera Instancia, Sala de Relaciones de Familia de Fajardo al decidir en contra del interés óptimo de los menores y declarar No Ha Lugar la designación de un perito forense privado que intervenga de inmediato para la validación de las alegaciones.
>
> Abusó de su discreción el Tribunal de Primera Instancia, Sala de Relaciones de Familia de Fajardo al enmendar y exteder de facto la Orden de Protección expedida en crasa violación al debido proceso de Ley.

---

[29] Véase, Entradas Núms. 191 y 192 en SUMAC del TPI.
[30] Véase, Entrada Núm. 196 en SUMAC del TPI.
[31] Véase, Entrada Núm. 201 en SUMAC del TPI.
[32] Véase, Entrada Núm. 203 en SUMAC del TPI.Notificada y archivada digitalmente el 16 de mayo de 2025.
[33] Véase, Entradas Núms. 202 y 204 en SUMAC del TPI.
[34] Véase, Entrada Núm. 211 en SUMAC del TPI.
[35] Véase, Entrada Núm. 232 en SUMAC del TPI.

El 3 de julio de 2025, la parte recurrida presentó su oposición. En la misma, sostiene que no se cometieron los señalamientos de error, por lo cual solicita la desestimación del recurso presentado ante nuestra consideración.[36]

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Véase, además, ***IG Builders et al v. BBVAPR***, 185 DPR 307, 337 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. ***Rivera Figueroa v. Joe's European Shop***, 183 DPR 580, 596 (2011).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1,[37] establece las instancias en las que el foro revisor posee autoridad para expedir un auto de *certiorari* sobre materia civil. ***Scotiabank v. ZAF Corp. et al.,*** 202 DPR 478 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender un recurso de *certiorari* que se trate sobre la revisión de dictámenes

---

[36] Véase, Entrada Núm. 6 en SUMAC del TA.

[37] Esta Regla dispone que:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

interlocutorios del Tribunal de Primera Instancia. ***Mun. Caguas v. JRO Construction, Inc.***, 201 DPR 703 (2019).

Si el auto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra,* debemos pasar entonces a un segundo análisis. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

Con el fin de que podamos ejercer de manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, págs. 59-60 215 DPR __ (2025), establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari.*[38]

**B.**

La jurisdicción es el poder o autoridad que posee un tribunal para considerar y adjudicar casos caso y controversias. ***Peerless Oil v. Hnos. Torres Pérez,*** 186 DPR 239, 249 (2012); ***Solá-Moreno v. Bengoa Becerra,*** 182 DPR 675, 682 (2011). Es norma reiterada que las cuestiones jurisdiccionales son privilegiadas y deben ser resueltas con preferencia a cualquiera otra. Los tribunales

---

[38] Esta Regla dispone lo siguiente:
> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

apelativos tienen un deber ministerial de velar por su jurisdicción, sin discreción para arrogársela cuando no la tienen. En todo caso, previo una decisión en los méritos, el tribunal determinará si tiene facultad para considerarlo. ***Arriaga Rivera v. F.S.E.,*** 145 DPR 122, 127 (1998); ***S.L.G. Szendrey-Ramos v. F. Castillo***, 169 DPR 873, 882 (2007). Por ello, un tribunal no tiene discreción para asumir jurisdicción cuando no la hay.

En el ámbito procesal, un recurso tardío "sencillamente adolece del grave e insubsanable defecto de privar de jurisdicción al tribunal al cual se recurre." ***S.L.G. Szendrey-Ramos v. F. Castillo,*** *supra*, pág. 883. Ello se debe a que su presentación carece de eficacia, por lo que no produce efecto jurídico alguno, ya que en el momento que fue presentado no había autoridad judicial alguna para acogerlo. Id.

En los casos en que se solicita la revisión de resoluciones u órdenes originadas en el Tribunal de Primera Instancia, se requiere que la parte adversamente afectada presente el recurso de certiorari dentro del término de cumplimiento estricto de treinta (30) días, contados a partir de la fecha de la notificación del dictamen. Regla 32 del Reglamento del Tribunal de Apelaciones, *supra*, pág.47. En el caso de los términos de cumplimiento estricto, se ha resuelto que los tribunales pueden prorrogarlo si están presentes dos (2) condiciones: (1) que la parte presente justa causa por la cual no pudo cumplir con el término establecido; y (2) que exponga las circunstancias específicas para la dilación; es decir, que la parte interesada acredite de manera adecuada la justa causa aludida. ***Soto Pino v. Uno Radio Group***, 189 DPR 84, 93 (2013); ***García Ramis v. Serrallés***, 171 DPR 250, 253 (2007). Si no lo hace, los tribunales carecen de discreción para prorrogar el término y, por ende, acoger el recurso ante su consideración. ***Soto Pino v. Uno Radio Group***, supra, pág. 92.

De determinarse que no hay jurisdicción sobre un recurso o sobre una controversia determinada, procede su desestimación. ***González v. Mayagüez Resort & Casino***, 176 DPR 848, 855 (2009).

A esos efectos, la Regla 83 del Reglamento del Tribunal de Apelaciones, *supra*, R. 83, nos autoriza a desestimar un recurso cuando estén presentes las circunstancias antes reseñadas.

## C.

De acuerdo a nuestro ordenamiento jurídico, es menester tener en cuenta que en aquellos casos en los que está en controversia la patria potestad, la custodia o las relaciones paternofiliales de un menor, el tribunal puede, a su discreción, buscar la asistencia de peritos en la conducta humana que le sirvan de herramienta para facilitar la compresión de los asuntos ante su consideración, así como facilitar la correcta solución de éstos. El perito asiste al juzgador de los hechos proveyéndole información especializada que sea relevante para atender y resolver las controversias legales ante la consideración del tribunal. ***Pena v. Pena II,*** 164 D.P.R. 949, 959-960 (2005).

Por lo cual, un tribunal enfrentado a un litigio en el que se dilucida la custodia, la patria potestad o las relaciones paternofiliales, no puede actuar imponderadamente. De ahí, que debe contar con la información más completa y variada posible para resolver la controversia. En casos de esta naturaleza, el tribunal puede ordenar la comparecencia de aquellas personas que entienda pueden ayudarle en el descargo de su delicada misión y, asimismo, ordenar aquellas investigaciones de índole social que entienda procedentes y convenientes. ***Pena v. Pena II****, supra*, 959.

La facultad discrecional que tienen los tribunales para ordenar la comparecencia de personas que le puedan asistir en la determinación de cuál es el mejor bienestar del menor en casos de

custodia, patria potestad o relaciones paternofiliales, o de ordenar pruebas psicológicas o psiquiátricas, debe ejercerse juiciosamente. Es importante que en su determinación el tribunal sopese los efectos adversos que estos exámenes puedan tener en la intromisión personal. Cuando una parte interese que peritos privados sometan a unos menores a evaluaciones psicológicas o psiquiátricas adicionales a las ya efectuadas por el perito del tribunal, la parte solicitante tiene que demostrar una necesidad clara que justifique las pruebas adicionales. Una vez establecida la clara necesidad de las pruebas, entonces el tribunal debe sopesar los intereses de quien lo solicita, frente al derecho a la intimidad de los menores. ***Otero Pann v. Delbrey Rivera***, 144 D.P.R. 688, 701-703 (1998).

Como es sabido, el perito seleccionado por el tribunal es un medio efectivo para llegar al conocimiento de la verdad. Por lo general, los peritos contratados por las partes pueden favorecer las respectivas posiciones de éstas. Por el contrario, el perito nombrado por el tribunal, por su presunta imparcialidad, se convierte en un valioso recurso para conocer con objetividad los factores psicológicos, emocionales o sociales que inciden sobre la controversia que se atiende. No obstante, en última instancia, la responsabilidad y la capacidad para adjudicar un pleito de custodia de menores descansa en los tribunales, y no en los peritos. ***Pena v. Pena II,*** *supra*, pág. 960.; ***Pena v. Pena I,*** *152 DPR 820 (2000);* Centeno Alicea v. Ortiz 105 D.P.R. 523 (1977).

En ese sentido, el Tribunal Supremo de Puerto Rico expresó que al requerírsele a los tribunales que evalúen y sopesen concienzudamente las peticiones sobre pruebas psiquiátricas y psicológicas adicionales a menores realizadas por peritos privados, "[e]n gran medida lo que se desea es minimizar cualquier efecto perjudicial que las constantes evaluaciones en casos de esta naturaleza tienen sobre los menores." ***Pena v. Pena II***, *supra*, pág.

963. Es un hecho que estos casos están matizados por una fuerte carga emocional que afecta no tan sólo a las partes, sino también, y sobre todo, a los menores involucrados. *Íd*. En cuanto al adecuado balance de intereses nuestro más alto foro ha sostenido que:

> De esta forma, se logra establecer un adecuado balance entre el interés de las partes de llevar a cabo su descubrimiento de prueba y el derecho a la intimidad de los menores. En última instancia, el derecho a descubrimiento de prueba de una parte no puede satisfacerse a costa de la salud emocional de un menor. Por otro lado, cabe recordar que un tribunal está facultado para, discrecionalmente, limitar el número de peritos que pueden ser presentados por las partes. *Íd*, en la pág. 964.

Conforme a la normativa antes expuesta, cuando una parte interese que peritos privados sometan a unos menores a evaluaciones psicológicas o psiquiátricas adicionales a las ya efectuadas por el perito del tribunal, la parte solicitante tiene que demostrar, como cuestión de umbral, una necesidad clara que justifique las pruebas adicionales. ***Otero Prann v. Delbrey Rivera***, *supra*, pág.690. Como antes expresado, establecida la necesidad de las pruebas, entonces el tribunal debe sopesar los intereses de quien peticiona, frente al derecho a la intimidad de esos menores. En ese ejercicio, el tribunal debe considerar, entre otros, los factores siguientes: la naturaleza del examen solicitado y lo invasivo de éste; la edad del menor involucrado; el efecto o la carga emocional o física que el examen o evaluación adicional conlleve para el menor; el valor probatorio que ese testimonio pericial tendrá sobre la controversia legal planteada ante el tribunal; y la evidencia disponible a las partes y al tribunal en ese momento. ***Pena v. Pena II***, *supra*, pág. 963.

## IV.

En el caso de marras, el peticionario imputa al TPI dos señalamientos de error. En síntesis, el señor Rivera Medina sostiene que erró el TPI al declarar "No Ha Lugar" su solicitud para la designación de un perito forense privado para validar las alegaciones

de abuso sexual en su contra, y el foro primario abuso de su discreción al enmendar de facto la Orden de Protección expedida en crasa violación al debido proceso de ley. En desacuerdo, la parte recurrida sostiene que: (1) el foro primario no incurrió en error, toda vez que el peticionario no demostró que el TPI hubiese incurrido en un abuso de discreción ni que dicha determinación fuera contraria a derecho; (2) el peticionario acudió ante este tribunal en destiempo, por lo que este tribunal carece de jurisdicción para atender el señalamiento de error. En consecuencia, la parte recurrida solicita a este Tribunal que: desestime el recurso presentado, o en su defecto, deniegue expedir el recurso de *certiorari,* o en la alternativa, confirme la determinación del foro primario.

En cuanto al primer señalamiento de error, de entender que procedería intervenir con el TPI, no tendríamos jurisdicción para atenderlo, por cuanto el recurso no fue presentado oportunamente. Según consta en el expediente, el 25 de marzo de 2025 se celebró la vista en su fondo en la cual se expidió una Orden de Protección final al amparo de la Ley 57, *supra,* con una vigencia de un (1) año. El peticionario no presentó una moción de reconcideración ni recurrio ante este tribunal dentro del termino jurisdiccional correspondiente. Del propio expediente surge que, el 24 de abril de 2025, el peticionario presentó una Moción Urgente en Solicitud de Orden sobre Patria Potestad, en la que solicitó diversos remedios relacionados los cuales se encontraba, obtener información en cuanto a los menores de los asuntos academicos, copia del expediente médico de las evaluaciones fisicas  y/o hallazgos. No obstante, dicha moción no incluyó una solicitud de reconsideración de la determinacion del foro primario el 25 de marzo de 2025. Consecuentemente, el 30 de abril de 2025, el TPI declaró No Ha lugar la Moción presentada por el peticionario.

Posteriormente, el 14 de mayo de 2025, la parte peticionaria presentó por primera vez, una Moción de Reconsideración de la Resolución Interlocutoria del 30 de abril de 2025. En dicha moción solicitó, entre otros remedios, la autorización del tribunal para la intervención y evaluación forense independiente por parte de la Dra. Ana Rosa Díaz Miranda, en aras de agilizar los procesos del DF. A la luz de estos hechos, concluimos que el primer señalamiento de error no fue oportunamente presentando ante la consideración de este Tribunal, y es traído ahora, en este recurso, de forma tardía, por lo que carecemos de jurisdicción para atenderlo.

Del expediente se desprende que los menores objetos de este caso, y sujetos a la petición de la evaluación pericial adicional e independiente que hace el peticionario, ya han sido evaluados, por los trabajadores sociales del DF, psicóloga y personal de CAAV/CIMVA. Además, consta en el récord un Informe Social presentado en el mes de marzo de 2025, que recoge las entrevistas y procesos evaluativos realizados a los menores, y que forman parte de una investigación que aún continua. La designación de un nuevo perito forense privado, como solicita el peticionario, tendría el efecto de someter a los menores a evaluaciones adicionales que podrían resultar perjudiciales en detrimento al mejor bienestar de estos menores al exponerlos a nuevas evaluaciones.

En cuanto al segundo señalamiento de error, la parte peticionaria sostiene que el TPI abuso de su discreción al enmendar de facto la Orden de Protección expedida en crasa violación al debido proceso de ley. Tras un análisis objetivo, sereno y cuidadoso del expediente, resolvemos que el segundo error señalado no se cometió. Del expediente de autos se desprende que la Orden de Protección expedida en favor de los menores, por el término de un (1) año, fue conforme a derecho. Así las cosas, del expediente ante nuestra consideracion no consta una actuación arbitraria, irrazonable o en

violacion al debido proceso que justifique un abuso de discresion por parte del foro primario. No intervendremos con la determinación del TPI.

**V.**

Por los fundamentos pormenorizados, se deniega la expedición del auto de *certiorari*.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones